CITY OF OTTAWA

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS *ex rel.*

JOHN D. CATON *et al.*

1. CONSTITUTIONAL LAW—*of the title of a private act.* The subject of the act of 7th of March, 1867, entitled "An Act to authorize the Town of Ottawa, in LaSalle County, to erect two bridges across the Illinois & Michigan Canal," is sufficiently expressed in such title. The adjuncts of that subject are not required to be expressed, or the *modus operandi.*

2. MANDAMUS—*to compel the performance of a certain duty in a particular case.* And in such case, when the act in question provided, that when constructed, the bridges should be maintained, repaired, (and if pivot bridges shall be built,)

30—48TH ILL.

opened for the passage of boats, by the corporation; *Held*, that by this language an *imperative* duty was imposed upon the city, to maintain and keep in repair, and open and close these bridges (pivot ones having been built,) for the passage of boats and travelers by land, to compel the performance of which duty, *mandamus* would lie.

3. SAME—*when performance of duty imposed is discretionary.* Where the law imposing a duty upon a municipal corporation, makes the performance thereof discretionary with its authorities, a writ of *mandamus* to compel such performance, will not lie; but if there is no discretion to act, it is otherwise.

4. FORMER DECISIONS. The cases of *The People* v. *Forquer*, Breese, 104; *School Inspectors of Peoria* v. *Grove*, 20 Ill. 526; *The People* v. *Hilliard*, 29 ib. 413, and *The People* v. *Gilmer*, 5 Gilm. 242, cited as conclusive of this doctrine.

5. MANDAMUS—*in what cases writ will lie.* Where the statute prescribes no remedy for the refusal to perform a duty made imperative thereby, or in case of doubt, whether there be another effectual remedy, the writ will be allowed.

6. SAME—*who may be the relator.* The question as to who shall be the relator in an application for a *mandamus*, depends on the object to be attained by the writ. Where the remedy is resorted to for the purpose of enforcing a private right, the person interested in having the right enforced, must be the relator. The relator is considered as the real party, and his right to the relief demanded must clearly appear. But when the object is the enforcement of a public right, the people are regarded as the real party, and the relator need not show that he has any legal interest in the result. It is enough that he is interested as a citizen, in having the laws executed, and the right in question enforced.

7. FORMER DECISION.—The case of *County of Pike* v. *The State*, 11 Ill. 202 cited as an authority in point.

APPEAL from the Circuit Court of LaSalle County; the Hon. EDWIN S. LELAND, Judge, presiding.

This was a proceeding by *mandamus* instituted in the court below, to compel the City of Ottawa, to maintain, repair, and open and close certain bridges named in the alternative writ, under an act of the general assembly, of March, 1867. The further facts in the case fully appear in the opinion.

Messrs. RICE & AVERY, for the appellant.

Mr. J. D. CATON, and Mr. GEO. C. CAMPBELL, for the appellees.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

On the seventh of March, 1867, the general assembly of this State, passed the following act, which was approved on that day :

## "AN ACT

### TO AUTHORIZE THE TOWN OF OTTAWA, IN LA SALLE COUNTY, TO ERECT TWO BRIDGES ACROSS THE ILLINOIS & MICHIGAN CANAL.

"*Sec. 1. Be it enacted by the people of the State of Illinois, represented in the General Assembly :*

" That Joseph O. Glover, Lorenzo Leland, and Albanus E. Grow, of said town of Ottawa, be and they are hereby appointed Commissioners to erect two bridges across the Illinois and Michigan Canal, with the necessary embankments and approaches thereto, in the City of Ottawa—one of said bridges to be located on some street east of LaSalle street, and the other on some street west of the side-cut ; and to cause the amount of money necessary therefor to be raised by taxation, as hereinafter mentioned.   Said bridges, when constructed, shall be maintained, repaired, and (if pivot bridges shall be built,) opened for the passage of boats, by the City of Ottawa : *Provided,* said bridges shall not be built until plans of the same shall be submitted to the Board of Trustees of the Illinois & Michigan Canal (or their successors) and be approved by them.

" Sec. 2. It shall be the duty of said Commissioners to cause both of said bridges, with the necessary embankments and approaches thereto, to be constructed and paid for by taxation, as follows : After having determined upon the plans thereof, and ascertained the cost, said Commissioners shall make report to the Board of Supervisors of LaSalle county, of the

sum of money necessary for the construction thereof, and thereupon it shall be the duty of said Board of Supervisors to cause the sums of money so reported to be levied and collected in the next ensuing year, in the same manner that other town taxes of the said town of Ottawa, are now levied and collected by law; and said sum of money when so collected shall be paid to said Commissioners, and shall be a fund to be used by said Commissioners for the erection of said bridges and the embankments and approaches thereto; and in case the said bridges, with the embankments and approaches thereto, should cost more than the sum of money reported, the deficiency may be raised in the same manner that the original amount was.

" Sec. 3. After said bridges shall have been completed, said Commissioners shall make a report to the town clerk of said town, of the manner in which they have discharged the duties imposed upon them by this act.

" Sec. 4. The Trustees of the Illinois & Michigan Canal, are hereby authorized and requested to contribute such sums towards the construction of such bridges as may be just and equitable.

" Sec. 5. This act shall take effect and be in force from and after its passage."

These Commissioners decided to erect one of the bridges on Columbus street, east of the side-cut, and the other on Walnut street, west of the side-cut, both in the City of Ottawa. The plan adopted was for pivot bridges, which was approved by the Board of Trustees of the Illinois & Michigan Canal.

The contract of building was let for the sum of seven thousand two hundred and fifty dollars for each bridge; one of them to be completed by the first day of January, 1868, and the other on the first day of March following.

At the September session, 1867, of the Board of Supervisors of LaSalle county, the Commissioners reported to them,

that it would be necessary to raise the sum of twelve thousand dollars for the construction of the bridges, which they caused to be levied and collected, which was paid over to the Commissioners.

On the thirty-first day of March, 1868, the Commissioners notified the Mayor and Common Council of the City of Ottawa, of the completion of the bridges, and of their duty under the first section of the act.

The authorities of the city did not cause the bridges to be opened for the passage of boats, but neglected and refused so to do, and refused to keep the bridges in repair.

While measures were in progress for levying the tax, the attorney of the City of Ottawa was instructed by the city council to take the necessary steps to test its validity, and prepared a bill in chancery to enjoin its collection; but, as we infer from the record, on its being represented to them that the glass works, about to be erected, would not be erected unless the Walnut street bridge was built; which was near the proposed location of the works, the city council adopted a resolution by a large majority of its members, declaring that the prosecution of the suit would not be for the public interest, and the city attorney was directed to cease its prosecution.

It would seem, that on the faith of this action of the common council, the glass works were erected near the north termination of the Walnut street bridge, at an outlay of more than sixty thousand dollars.

It also appears that, on Columbus street the city engaged, with others, in erecting a large hotel; they embarking in that enterprise ten thousand dollars, the advantages of which are alleged to be greatly lessened by the neglect of the city to take charge of the bridge on that street, and it is alleged that the danger of navigating the canal is greatly increased by this neglect, for injuries resulting to which, the city would be liable.

Parties interested in the glass works, and as citizens and property holders in the City of Ottawa, on this continued refusal of the city authorities to take these bridges in their charge, and to provide means to open and close them, applied to the Circuit Court of LaSalle county, at the June term thereof, 1868, for an alternative writ of *mandamus*, to compel them to take charge of these bridges, and keep them attended and in repair, or show cause why they should not do so, and why a peremptory writ should not issue.

To this alternative writ, the city, by their attorney, demurred generally. The court overruled the demurrer, by which the city abided, and prayed an appeal to this court, and make here several points, the most important of which will be noticed.

The first point made is, that the act of the legislature is unconstitutional and void, they having no power to appoint commissioners to levy a tax on the town of Ottawa, or to authorize the Board of Supervisors to levy such a tax. 2. That the act of the legislature embraces more than one subject, and neither of the subjects is embraced in the title. 3. That it is discretionary with the city council to take charge of these bridges. 4. That the relators have an adequate legal remedy against the city, if any wrong has been committed by it, against the relators. 5. The writ does not show a sufficient legal interest in the things sought to be done, to entitle them to the writ.

No argument or authorities are furnished in support of the first point, which we much regret; nor is any authority referred to on the other points.

The second point is not tenable, for the subject, that of building two bridges across the canal at Ottawa, is expressed in the title. The adjuncts to that subject are not required to be expressed, or the *modus operandi*.

Whether it is discretionary or not with the city council to take charge of these bridges, which is the third point made

by .appellants, must be determined by reference to the act itself. By the first section of the act in question, it is provided, that these bridges, when constructed, shall be maintained, repaired, (and if pivot bridges shall be built), opened for the passage of boats by the city of Ottawa. Private Laws of 1867, page 182.

Here the duty is distinctly imposed upon the city, to maintain and keep in repair these bridges, and open them for the passage of boats, and it would follow, as a legitimate consequence, that they were to close them for the passage of travelers by land. They have no discretion about it, but the duty is imperative.

Right here arises the important question in the case; does mandamus lie to compel the city to perform this duty?

This is an important question, and on which we have been furnished with no authority on either side.

In the case of *The People* v. *Forquer*, Breese 104, Esp. *Nisi Prius* 665, was referred to with approbation, in which it was said the court would not grant a *mandamus* to a person to do any act whatever, where it was doubtful whether he has, by law, a right to do such act or not, for such would be to render the process of the court nugatory, as if the person had no right, he might so return it.

Again, the petition should show that the relator has no other remedy, it being granted only in extraordinary cases, where, without it, there would be a failure of justice. *School Inspectors of Peoria* v. *Grove*, 20 Ill. 526. Yet, in the case of *The People* v. *Hilliard*, 29 ib. 413, it was held, that it was not indispensable the petition should state that the relator is without any other adequate remedy, if that appears to the court to be the fact. Again, in the case of *The People* v. *Gilmer*, 5 Gilm. 242, it was said that a mandamus can only be issued to compel a party to act, when it was his duty to act without it.

From all the authorities, the conclusion is, that when there is a discretion to act, the writ will not be awarded. In this

case, the city council have no discretion; the duty is imposed on them by a special law, the performance of which they cannot shirk.

It is also a maxim of the law, that this writ is not grantable of right, but by prerogative; and the absence or want of a specific legal remedy, gives the court jurisdiction to dispense it. This is the fourth point made by appellants.

The writ is not granted to give an easier or more expeditious remedy, but only when there is no other remedy, both legal and specific. Tapping on Mandamus, 69, 70. Thus, if the statute prescribe a particular remedy, no other remedy can be taken, and therefore, in such a case, mandamus will not lie; but if the remedy be not equally efficacious and convenient, the writ will be granted. So if it be doubtful whether there be another effectual remedy, or the court does not clearly see its way to one, the writ will be granted. Ibid. 71.

The act of the legislature prescribes no remedy for the refusal of the city to take charge of the bridges, and that it is of the utmost importance, not only to the relators, but to the public and to the State at large, that they should be taken proper care of and tended, is undeniable; and as we do not see the way clear for any other remedy, we must conclude *mandamus* is the proper one.

The last point made by appellants is, that the relators do not show sufficient legal interest in the things sought to be done to entitle them to the writ.

On this head, we refer to the case of the *County of Pike* v. *The State*, 11 Ill. 202, where it was held that this question, who shall be the relator, depends on the object to be attained by the writ. When the remedy is resorted to for the purpose of enforcing a private right, the person interested in having the right enforced must be the relator. The relator is considered the real party, and his right to the relief must clearly appear; but where the object is the enforcement of a public right, the people are regarded as the real party, and the relator

need not show he has any legal interest in the result. It is enough that he is interested, as a citizen, in having the laws executed, and the duty in question enforced.

We leave out of view the allegations of breach of faith and violated promises, promises or assurances made, to induce the erection of the glass works, and place the case on the broad ground of duty imposed, in the performance of which, not only the relators, but the people, have an abiding interest. There is no adequate remedy but by this writ, and we are of opinion a peremptory *mandamus* should issue, and accordingly affirm the judgment of the circuit court.

*Judgment affirmed.*