(No. 38311.—

THE PEOPLE *ex rel.* John W. Spence *et al.,* Petitioners, *vs.* CHARLES F. CARPENTIER, Secretary of State, *et al.,* Respondents.

*Opinion filed Jan. 4, 1964.—Rehearing denied Jan. 16, 1964.*

House and Underwood, JJ., dissenting.

James B. Wham, of Centralia, for petitioners.

William G. Clark, Attorney General, of Springfield, and Don H. Reuben, of Chicago, (William C. Wines, Assistant Attorney General, of counsel,) for respondents.

Mr. Chief Justice Klingbiel delivered the opinion of the court:

Pursuant to leave heretofore granted by this court, two citizen-taxpayers of Illinois filed an original petition for *mandamus* against the Secretary of State and members of the State Electoral Board. The petition is concerned with the respondents' duties in connection with the forthcoming 1964 election of representatives to the General Assembly, and it prays that in performing them, respondents be ordered to act on the basis of districts established by the Reapportionment Act of 1955. (Ill. Rev. Stat. 1955, chap. 46 par. 158—1 *et seq.*) Certain respondent members of the Board, namely chairman Otto Kerner together with William G. Clark and Michael J. Howlett, have adopted a similar position and have filed a brief in support of it. The petition is opposed by the remaining respondents, Charles F. Carpentier and William J. Scott, whose motion to dismiss has closed the issues in the cause.

The petition recites that by the 1955 act the General Assembly redistricted the State for the purpose of electing State senators, and redistricted the State for the purpose of electing State representatives, as required by the constitution, that the constitution directs the General Assembly to redistrict again in 1963 for the purpose of electing State representatives, that the General Assembly did so at its regular 1963 session, House Bill 978 for this purpose being passed in the House on June 21 and in the Senate on June 27, but that on July 1 the Governor vetoed the bill and thereafter appointed a commission to do the redistricting.

It is then alleged that in appointing a commission the Governor acted without authority in law, that under the constitution his authority to do so exists only if the General Assembly "fails by the first day of July to redistrict the state," that the General Assembly in fact did redistrict by enacting House Bill 978, which was not vetoed prior to July 1, and that the condition precedent to a redistricting by commission (*i.e.* a failure by the General Assembly to redistrict by July 1) therefore did not occur. The conclusion is alleged to follow from this that the prior law, namely the Reapportionment Act of 1955, remains in effect.

The pertinent constitutional provisions are found in sections 6, 7 and 8 of article IV. Section 6 declares that "The General Assembly in 1955 shall redistrict the state for the purpose of electing state senators", and the section further directs *inter alia,* that in the formation of such districts "area shall be the prime consideration." Section 7 declares that "the General Assembly in 1955 and in 1963, and every ten years thereafter, shall redistrict the state for the purpose of electing state representatives." Provisions then follow for the formation of such districts as nearly as practicable on a basis of population.

Section 8 is designed to assure that action be taken to carry out the commands of sections 6 and 7. It contemplates the possibility that the General Assembly might not

redistrict, and it directs that "If, however, the regular session of the General Assembly in 1955 as to both senatorial and representative districts or in 1963, or any ten years thereafter as to representative districts, fails by the first day of July to redistrict the state into such districts, then the redistricting shall be accomplished by a commission." Provisions follow prescribing the method of appointing the commission and the manner in which it shall act. It is then provided, insofar as is presently relevant, that if the commission fails to act within four months of its appointment "all state representatives shall be nominated and elected at the next election from the state at large."

In obedience to the command of the constitution the General Assembly in 1955 redistricted the State for senatorial purposes, thus performing in full its duties under section 6. The same General Assembly redistricted as required by section 7 for State representative purposes. This was done by one legislative enactment. Since centers of population tend to shift and since State representative districts are to be formed on a population basis, section 7 provides for recurring reapportionment duties. It designates the year 1963 as the next succeeding reapportionment year, and as the petitioners allege, House Bill 978, purporting to redistrict for this purpose, was passed by both branches of the 1963 legislature. It failed to become effective because of the Governor's veto on July 1. The commission which was subsequently appointed by the Governor failed to redistrict within the four-month period of life prescribed by the constitution, and, if authority existed to appoint a commission, the result of such failure, as spelled out by section 8, is that in 1964 State representatives must be nominated and elected at large.

To avoid this consequence petitioners argue that when a measure is vetoed the legal effect is that the existing law —in this case the representative districting established by the 1955 legislation—remains in force. It is not disputed

that in the absence of provision for a different result a veto leaves the existing law in effect. But the very question in this case is whether the provisions of section 8 call for a different result. This court held in *Williams* v. *Kerner,* Docket No. 38106, that reapportionment measures, like other legislative enactments, are subject to the veto power of the Governor. The question presented here concerns the effect of an exercise of that power. Did the Governor's veto of the bill to redistrict the State leave undisturbed the existing representatives districts? Or did it bring into operation his duty to appoint a commission?

A proper determination of this issue depends upon whether the constitutional provision, in referring to a failure of the General Assembly to redistrict, means failure to pass a bill or failure to pass a bill that becomes law. The petitioners argue that since the General Assembly "acted" prior to July 1 the condition precedent to the appointment of a commission was not fulfilled. We cannot accept the argument. The constitution does not refer to a mere failure to act or to pass a bill. It refers to a failure to *redistrict.* Redistricting can be accomplished, insofar as the General Assembly is concerned, only by the enactment of a law, and since House Bill 978 never became law there can have been no "redistricting" by the General Assembly. That the failure was occasioned by a veto, rather than by some other hitch in the lawmaking process is not material here. Under any reasonable reading of the constitutional provision the passing of July 1 without adoption of an act that results in a redistricting law starts the machinery for a redistricting by commission.

We think the evident design of section 8 contemplates that there be either a redistricting (by legislative act or by commission, as the case may be) or an election at large. There is no intimation that the old districting be retained in the absence of effective legislation, or under any other circumstances. Indeed the very purpose of the 1954 amend-

ments incorporating these provisions was to prevent the leaving of existing law in effect. See *Donovan* v. *Holzman,* 8 Ill. 2d 87.

Petitioners argue that this view would require the Governor to approve by July 1 in order to prevent failure of a reapportionment act, that even though a bill passed both houses by July 1 and was approved by the Governor, the reapportionment must be by commission unless such approval also occurred by July 1. We cannot see merit in the argument. By section 13 of article IV the constitution says (subject to an exception not relevant here) that "no act of the general assembly shall take effect until the first day of July next after its passage * * *" and it is evident that the "first day of July" referred to in section 8 is intended as the deadline for an act of the General Assembly, even though before it becomes a law the act requires approval by the Governor. (*Cf. Board of Education* v. *Morgan,* 316 Ill. 143, 148.) Insofar as the time element only is concerned, the word "reapportionment" as used in section 8 contemplates merely passage by the House and Senate by July 1. But insofar as use of the alternative commission method is concerned we do not think the word can be read as requiring executive approval by July 1, any more than it can be read as requiring the actual reapportionment to be completed by that date. The word must be understood in the light of the manifest purpose of the section as a whole. The construction urged by petitioners is, we think, a strained one and would result in defeating the constitutional objective.

We conclude, therefore, that since no act was passed which became law there was a failure by the General Assembly to "redistrict", that the commission was therefore validly appointed, and that its failure to act must result, under the requirements of section 8, in the nomination and election of State representatives at large.

The allegations of the petition for writ of *mandamus*

are insufficient to show a right thereto, and the petition is accordingly denied.

*Writ denied.*

Mr. JUSTICE HOUSE, dissenting:

Accepting, as I must, the holding of a majority of my colleagues that the Governor's veto of House Bill 978 was effective, I nevertheless dissent from their conclusion in this case that failure of the General Assembly to redistrict means failure to pass a bill that becomes a law rather than failure to pass a bill.

Mr. Justice Schaefer's dissent in *People ex rel. Giannis v. Carpentier, ante,* p. 24, admits unmistakably that the provisions for a "commission" and "running at large" were put into section 8 of article IV of the constitution as coercive measures to make the members of the General Assembly pass a reapportionment bill every 10 years. These coercive measures served their purpose in this case in as much as the members of the Seventy-third General Assembly enacted a redistricting bill. And yet, the majority holds that these coercive measures are to be applied because the legislative enactment did not meet with the Governor's approval.

In my opinion the "commission" and "at large" provisions were to be invoked only if the legislature, as had been its practice for some 50 years, failed to pass a reapportionment bill. Since the legislature did pass a bill, which action was negatived by the Governor, I would hold that the reapportionment act of 1955 is still the law and that State representatives run from the districts created under that act.

The General Assembly has within its power the duty and ability to pass a redistricting bill, and if it fails to do so, several harsh sanctions, namely, the "commission" and "at large" provisions of section 8 of article IV, can and should be invoked. The holding in this case seems to have

effectively deprived future legislatures of the usual choices and discretion they have in enacting legislation. Now the General Assembly must not only enact a redistricting bill, but must enact one that will meet with the Governor's approval or face the prospect of "running at large".

Mr. JUSTICE UNDERWOOD, also dissenting:

I dissent for the reasons stated by me in *Williams* v. *Kerner, ante,* p. 11, and for the further reason that even conceding the validity of the veto of the 1963 reapportionment bill, as the majority opinion in that case holds, I believe the subsequent provisions for the appointment of a commission and an at-large election do not become operative.

It is apparent to me that the sanctions placed upon the General Assembly in the event of its failure to act are so onerous and the conditions surrounding an at-large election so chaotic as to compel the conclusion that they were to become effective only as extraordinary penalties and where action may have been prevented by a power beyond the control of the General Assembly it was not intended that the penalties should be invoked.

Here the General Assembly was adjourned, not on its own initiative, but by gubernatorial proclamation on June 28th at a time when Senate Bill No. 83, a reapportionment bill which had passed the Senate, was in the House. What might or might not thereafter have occurred is pure speculation. The important factor is that some action could conceivably have occurred. In my opinion it was not the intention of the framers of the constitutional amendment embodied in section 8 that the provisions relating to a commission and an at-large election should become effective under such circumstances.

It would therefore follow that the writ of *mandamus* based upon the 1955 districts should be allowed.