Rosalie E. SWANSON, Plaintiff,

v.

The STATE OF ILLINOIS, Charles F. Carpentier, Secretary of State of the State of Illinois, Otto Kerner, Governor of the State of Illinois, Defendants.

Leland L. CHESLEY, Plaintiff,

v.

Otto KERNER, Governor of the State of Illinois, and Charles F. Carpentier, Secretary of State of the State of Illinois, Defendants.

Nos. 63 C 2303, 63 C 2314.

United States District Court
N. D. Illinois, E. D.

Feb. 28, 1964.

Warren L. Swanson, Chicago, Ill., for plaintiff Swanson.

Alan S. Ganz and Bernard Wiczer, Chicago, Ill., for plaintiff, Chesley, Norville, Walsh & Case, Chicago, Ill., of counsel.

**700**

Wm. G. Clark, Atty. Gen., William C. Wines, Raymond S. Sarnow, Edward V. Hanrahan, Richard A. Michael, Asst. Attys. Gen., of counsel, for defendants State of Illinois and Governor Kerner.

Don H. Reuben, Jack S. Levin, Lawrence Gunnels, Chicago, Ill., for defendant Carpentier, Kirkland, Ellis, Hodson, Chaffetz & Masters, Chicago, Ill., of counsel.

Before CASTLE, Circuit Judge, and HOFFMAN and WILL, District Judges.

WILL, District Judge.

These cases have their genesis in the failure of the General Assembly of the State of Illinois to reapportion the State's House of Representatives during the 1963 legislative session as required and directed by Art. IV, §§ 7 and 8, of the Illinois Constitution of 1870, as amended, S.H.A. [1]

During the final days of the regular session of the Seventy-Third General Assembly, the two Houses of the Illinois

1. "§ 7. The General Assembly in 1955 and in 1963, and every ten years thereafter, shall redistrict the state for the purpose of electing state representatives. There shall be fifty-nine representative districts. In the 1955 redistricting Cook County shall have thirty of the districts. These thirty districts shall be located as follows: Twenty-three in the territory that is within the present corporate limits of the City of Chicago; and seven in the territory that is in Cook County outside such corporate limits. In the 1955 redistricting, the remaining one hundred and one counties of the state shall have twenty-nine of the representative districts. In redistricting subsequent to the 1960 census, and thereafter, the fifty-nine representative districts shall be divided among (1) that part of Cook County that is within the present corporate limits of the City of Chicago, (2) that part of Cook county that is outside such corporate limits, and (3) the remaining one hundred and one counties of the state, as nearly as may be, as the population of each of these three divisions bears to the total population of the state.

"Representative districts shall be formed of contiguous and compact territory, and shall contain, as nearly as practicable, a population equal to the representative ratio; outside of Cook County, such districts shall be bounded by county lines unless the population of any county entitles it to more than one representative district. The representative ratio for the entire state shall be the quotient obtained by dividing the population of the state by fifty-nine. No representative district may contain less population than four-fifths of the representative ratio.

"Three representatives shall be elected in each representative district in 1956 and every two years thereafter. The term of office shall be two years. In all elections of representatives aforesaid, each qualified voter may cast as many votes for one candidate as there are representatives to be elected, or may distribute the same, or equal parts thereof, among the candidates as he shall see fit; and the candidates highest in votes shall be declared elected.

"§ 8. In performing its duties under Sections 6 and 7 of this amendment, the General Assembly shall redistrict and reapportion in a single legislative enactment. If, however, the regular session of the General Assembly in 1955 as to both senatorial and representative districts or in 1963, or any ten years thereafter as to representative districts, fails by the first day of July to redistrict the state into such districts, then the redistricting shall be accomplished by a commission. Within thirty days after such first day of July, the state central committee of each of the two political parties, casting the highest votes for governor at the last preceding gubernatorial election, shall submit to the governor of the state a list of ten persons. Within thirty days thereafter, the governor shall appoint the commission of ten members, five from each list. * * *

"This commission shall redistrict the state into senatorial districts and into representatives districts in the manner specified above. This commission shall file with the secretary of state a full statement of the numbers of the senatorial and representative districts and their boundaries. No such statement shall be valid unless approved by seven members of such commission.

" * * * If, however, the statement is not filed within four months after the commission is appointed it shall stand discharged. Thereupon, all senators, scheduled for election at the next election for state senators, and all state representatives shall be nominated and elected at the next election from the state at large. Following such an election at large, the General Assembly at its next regular session shall perform the duties specified in this amendment."

legislature passed a bill redistricting the state into 59 Representative Districts.[2] Governor Kerner vetoed the bill, which veto survived a court test in Williams v. Kerner, 30 Ill.2d 11, 195 N.E.2d 680 (1964). After vetoing the redistricting bill passed by the legislature, the Governor, pursuant to the procedures set out in the above sections of the Illinois Constitution, appointed a ten member commission empowered to reapportion the state. That body was unable, within its statutory life, to reach agreement on new district lines.

As the state prepared to hold an at large election, certain citizens challenged the interpretation of the above related facts as requiring an at large election and sought a ruling permitting candidates for the office of State Representative to run from the old districts. Refusing the construction urged upon it, the Supreme Court of Illinois, in People ex rel. Spence v. Carpentier, 30 Ill.2d 43, 195 N.E.2d 690 (1964) held "that since no act was passed which became law there was a failure by the General Assembly to 'redistrict', that the commission was therefore validly appointed, and that its failure to act must result, under the requirements of section 8, in the nomination and election of State representatives at large." Id., 195 N.E.2d at 693.

Faced with the reality of an impending at large election, the Governor called the General Assembly into special session to provide legislation establishing the mechanics for such balloting. The legislature responded to its task by passing House Bill 1[3], which was subsequently signed into law by the Governor. That Act, detailing the procedures to be followed in conducting the 1964 at large election, is now under attack in the Il-linois Supreme Court as being violative of the Federal Constitution. The case, Daniels v. Carpentier, No. 38386, Sup.Ct. Ill., Mar. Term, 1964, is set for a hearing on March 17, 1964.

The plaintiffs in the two cases here consolidated for hearing challenge the validity of Art. IV, §§ 7 and 8, of the Illinois Constitution under the Federal Constitution. Both Swanson and Chesley are identified as citizens and electors residing in the State of Illinois and as voters eligible to vote for candidates for State Representative in the November, 1964, general election. The plaintiffs seek to make this cause a class action, bringing suit on their own behalf and for all other electors and citizens of the state.

█ Defendant Kerner is named in his capacity as Governor of the state; defendant Carpentier, as the incumbent Secretary of State. Both defendants are members of the State Electoral Board, which is charged with general supervisory authority over elections held in the state and which body attorneys for the defendants suggest, while waiving the point as an avenue of possible defense, is the proper defendant in this case. The State of Illinois, made a defendant in Swanson, 63 C 2303, is improperly joined and is hereby dismissed as a party in that action.

The Court's jurisdiction in this cause rests on 28 U.S.C. § 1343(3). This three judge panel is constituted and convened under 28 U.S.C. § 2284, pursuant to 28 U.S.C. § 2281. The cases come on for hearing on defendants' motions to dismiss or, in the alternative, to abstain.

█ Plaintiffs would have us hold that any at large election for the office of State Representative is unconstitutional.

2. An Act to repeal Sections 6, 7 and 8 of and to add Sections 6.1, 7.1 and 8.1 to "An Act to apportion the State of Illinois into senatorial and representative districts and to repeal an Act herein named", approved June 28, 1955.

3. An Act to amend Sections 7–1, 7–4, 7–12, 8–1, 8–3, 8–4, 8–5, 8–6, 8–9, 8–10, 8–11, 8–13, 8–14, 13–12, 14–11, 16–3, 17–5, 17–6, 17–8, 17–12, 17–13, 17–16, 17–18, 17–19, 17–19.1, 18–5, 18–8, 23–12 and 24–11 of, to add Article 8A and Section 15–5 to, and to repeal Sections 7–12.1 and 8–9.1 of "The Election Code", approved May 11, 1943, as amended, and making an appropriation in connection therewith.

It is clear that at large elections are not unconstitutional per se. See Smiley v. Holm, 285 U.S. 355, 52 S.Ct. 397, 76 L.Ed. 795 (1932) and Carroll v. Becker, 285 U.S. 380, 52 S.Ct. 402, 76 L.Ed. 807 (1932), holding constitutional at large elections of members of the United States House of Representatives. The office and numbers are different in the instant case, but, so far as the due process and equal protection challenges raised here, the principle is the same.

 Moreover, it is well settled that courts will not pass on constitutional questions in the abstract. Allen-Bradley Local No. 1111, Elec., etc. Workers v. Wisconsin Employment Relations Bd., 315 U.S. 740, 62 S.Ct. 820, 86 L.Ed. 1154 (1942); Local No. 8-6, Oil, etc. Workers v. Missouri, 361 U.S. 363, 80 S.Ct. 391, 4 L.Ed.2d 373 (1960). In this connection, it should be noted that the instant cases, which were instituted prior to the enactment of House Bill 1, do not raise the question, now before the Illinois Supreme Court in Daniels, supra, of the constitutionality of the at large election procedure embodied in that bill. On the contrary, in oral argument, counsel for the plaintiffs specifically rejected that issue in these cases. Accordingly, there is not before this Court at the present time any Federal constitutional question on which it may properly rule.

Before this Court can rule on the constitutionality of the contemplated November, 1964, at large election for State Representatives in Illinois, we must await interpretation of the statute, House Bill 1, enacted to govern that election. Hence, we must abstain until after a final determination of the issues raised in Daniels.

Our employment of the abstention doctrine does not work to deprive the plaintiffs of a federal forum. We maintain jurisdiction and retain the cases until Daniels is decided. If, after final determination of Daniels, Federal constitutional questions remain unresolved, the plaintiffs may return to this Court for a determination of those issues.

If, on the other hand as seems likely, the Illinois Supreme Court in Daniels weighs the Federal constitutional questions relating to the at large election contemplated by House Bill 1, its decision may be reviewed by the United States Supreme Court upon certiorari. England v. Louisiana State Bd. of Medical Examiners, 1964, 84 S.Ct. 461; NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). Upon final adjudication of Daniels, it may well be that the plaintiffs here, as members of the class represented in that case, will have had a complete and final adjudication of their claims and the instant actions will become moot.

In the light of all the foregoing considerations, we conclude that abstention is the only proper course for us to follow at this time.

An order consistent with the foregoing will be entered.