(Docket Nos. 38386, 38421, Cons.—

THE PEOPLE *ex rel.* Lee Daniels *et al.,* Petitioners *vs.* CHARLES F. CARPENTIER, Secretary of State, *et al.,* Respondents.—THE PEOPLE *ex rel.* John J. Dillon *et al.,* Petitioners *vs.* Same, Respondents.

*Opinion filed April 21, 1964.—Rehearing denied May 19, 1964.*

LASSWELL & EILERT, of Geneva, (ROY S. LASSWELL, of counsel,) for petitioners LEE DANIELS, *et al.*

JOHN J. DILLON, of Chicago, *pro se* and other petitioners.

WILLIAM G. CLARK, Attorney General, of Springfield, (RAYMOND S. SARNOW, EDWARD V. HANRAHAN, RICHARD A. MICHAEL, and EDWARD A. BERMAN, Assistant Attorneys General, of counsel,) for respondents.

Mr. CHIEF JUSTICE KLINGBIEL delivered the opinion of the court:

Pursuant to leave of court, original petitions for writs of *mandamus* were filed by citizen-taxpayers to contest the constitutionality, both State and Federal, of House Bill No. 1, enacted by the 73rd General Assembly in special session. Respondents, the Secretary of State and members of the State Electoral Board, whose duty it is to enforce the questioned statute, filed motions to dismiss the petitions, thereby closing the issues; we then consolidated the actions.

House Bill No. 1 enacts election laws for the forthcoming at-large election of the Illinois House of Representatives. That election is required because House districts were not reapportioned in 1963 in accordance with the State constitution (aricle IV, section 7). The General Assembly had passed a redistricting act in the regular session; however, the Governor vetoed the act and then appointed a special commission to redistrict the State, pursuant to section 8 of article IV. (See *Williams* v. *Kerner,* 30 Ill.2d 11.) The commission failed to redistrict within the prescribed time and, accordingly, all 177 members of the House must be elected in 1964 from the State at large. *People ex rel. Spence* v. *Carpentier,* 30 Ill.2d 43; see, also, *People ex rel. Giannis* v. *Carpentier,* 30 Ill.2d 24.

This is the first instance in which the entire membership of either house of the General Assembly is to be elected at large. The provisions of the Election Code in existence prior to House Bill No. 1 (Ill. Rev. Stat. 1963, chap. 46, par. 8—1 *et seq.,*) provided only for nominating and electing representatives by districts.

House Bill No. 1 provides that nomination of representative candidates shall be made by State-wide conventions of each political party to be held in June, 1964 (pars. 8A—2, 8A—4). Delegates to the conventions are to be elected by the voters of each party at the regular primary election on April 14 (par. 8A—3). Two delegates will be

elected from each of the 59 "delegate districts" which are the same districts as those created by the last valid legislative redistricting (*i.e.*, the districts drawn by the Reapportionment Act of 1955, Ill. Rev. Stat. 1955, chap. 46, pars. 8—1 *et seq.*). Each delegate will be entitled to cast a weighted vote equal to one half the total votes cast in his district for the House candidates of his party at the 1962 general election of representatives (par. 8A—4).

Petitioners first contend that the legislature could not validly provide for the nomination of House candidates by party convention in lieu of the traditional method of direct primary election. But this court on several occasions has sustained the convention method of nominating political candidates. (See, *e.g., People ex rel. Kell v. Kramer,* 328 Ill. 512; *People ex rel. Brundage v. Brady,* 302 Ill. 576; *People ex rel. Gash v. Sweitzer,* 282 Ill. 171.) We perceive no sound reason to depart from these precedents in the context of the forthcoming House election, and petitioners have suggested none. The constitutional language here applicable, that House members are to be "nominated and elected" at large (section 8 of article IV), clearly does not preclude nomination of candidates by any of the recognized and approved modes for so doing. In selecting among the alternative methods to be followed in nominating candidates, we believe the General Assembly acted within its allowable sphere of legislative discretion, and we, of course, may not substitute our discretion for that of the legislature. See *People ex rel. Cermak v. Emmerson,* 323 Ill. 561; *People ex rel. Gash v. Sweitzer,* 282 Ill. 171.

Moreover, it is to be noted that the nomination procedure encompassed within House Bill No. 1 does not dispense altogether with the primary election, for it is at the primary that the electorate chooses those delegates who will attend the conventions and select the nominees by weighted votes. We conclude that House Bill No. 1 provides an orderly and long-accepted method of nomination that is

consistent with both the "free and equal" elections requirement of the State constitution (article II, section 18) and the equal-protection mandate of the fourteenth amendment to the Federal constitution. See *Moran* v. *Bowley*, 347 Ill. 148; *People ex rel. Lindstrand* v. *Emmerson*, 333 Ill. 606; *People ex rel. Brundage* v. *Brady*, 302 Ill. 576; *Gray* v. *Sanders*, 372 U.S. 368, 9 L. ed. 2d 821.

Although the entire House membership of 177 seats must be filled at the general election, House Bill No. 1 provides that, "In order to preserve the principle of minority representation in the House of Representatives," each party convention shall nominate not more than 118 candidates for the House (par. 8A—5). If the conventions decide to nominate fewer than 118 candidates, each must nominate the same number; if they cannot agree upon a common number less than 118, then each convention must nominate 118 (par. 8A—5). At the general election, voters may cast one vote each for up to 177 candidates, but they may not cumulate their votes, *i.e.*, "give more than one vote to any one candidate" (par. 8A—9).

Petitioners contend that the General Assembly may not validly restrict to 118 the number of nominees each party may slate, or suspend the cumulative voting provision of the constitution (article IV, section 7) in an at-large election.

We presume cumulative voting was suspended by House Bill No. 1 because of the severe hardships that would manifestly result from the use of cumulative voting in an at-large election involving 177 House seats. If votes were cast on a cumulative basis in such an election, problems of inordinate complexity would be imposed not only upon individual voters in marking their ballots but also upon the election officials in computing the results. The General Assembly was faced on the one hand with the need to avoid these problems and achieve an orderly at-large election, and on the other hand with the necessity of securing mi-

nority representation in the House, which is, of course, the purpose of the cumulative voting provision. This court has long recognized that minority representation in the House is a principle firmly entrenched in the democratic traditions and ideologies of this State. (See *Foreen* v. *Sratton*, 9 Ill.2d 618; *People ex rel. Espey* v. *Deneen*, 247 Ill. 289.) The principle has consistently been fulfilled since 1870 by means of the cumulative voting provision, which was inserted in the constitution for that purpose. See Debates of the 1870 Constitutional Convention of the State of Illinois, Vol. I, pp. 560-564, Vol. II, pp. 1726-1730.

House Bill No. 1's recitals make clear that the legislature eliminated cumulative voting and at the same time limited each party to nomination of 118 candidates (par. 8A—5) to contemporaneously ensure both an orderly election and minority representation.

The language of the cumulative voting provision in present section 7 of article IV has its root in the constitution of 1870, in which constitution there was no provision whatsoever for an at-large election. The at-large election requirement of section 8 of article IV is a recent innovation, having first become law in the reapportionment amendments of 1954; the drafters of the 1954 amendments retained the identical cumulative voting language used in the 1870 constitution. We believe that the cumulative voting provision of section 7 was never contemplated or intended to apply to an at-large election of the House, and we accordingly conclude that the General Assembly was within its power in suspending cumulative voting in such an election so long as there is some adequate and reasonable substitute provision to ensure minority representation. In passing upon the validity of assailed election laws, we have often accorded considerable weight to such factors as the purpose to be achieved and the necessity and desirability of alleviating confusion, hardship and inconvenience. *E.g., People ex rel. Broomell* v. *Board of Election Comrs. of Chicago,*

343 Ill. 66; *People ex rel. Cermak v. Emmerson,* 323 Ill. 561.

What we have said concerning the suspension of cumulative voting also disposes of petitioners' contention that the legislature may not limit candidates to 118. This court has expressly enjoined that "any regulation of the nomination of candidates * * *, whether by primary or convention, must not prevent minority representation in the lower house of the General Assembly." (*People ex rel. Lindstrand v. Emmerson,* 333 Ill. 606, 616.) We think the legislature has satisfied this criterion by limiting to two-thirds of the total seats the number of House nominees each party may slate for the at-large election. Since this limitation clearly serves the purpose for which the cumulative voting provision was inserted in the constitution, *i.e.,* to ensure minority representation, the General Assembly could and did properly suspend the use of cumulative voting in House Bill No. 1.

Petitioners' final contention is that a nomination and election conducted pursuant to House Bill No. 1 would contravene the fourteenth amendment to the Federal constitution. We think the argument is without merit. A number of Federal decisions have approvingly cited the use of at-large elections of legislators, and it is clear in light of such precedents that at-large elections are not *per se* violative of any Federal constitutional provision. (See, *e.g., Smiley v. Holm,* 285 U.S. 355, 76 L. ed. 795; *Carroll v. Becker,* 285 U.S. 380, 76 L. ed. 807; *Colegrove v. Green,* 328 U.S. 549, 90 L. ed. 1432; *Wesberry v. Sanders,* 376 U.S. 1, 11 L. ed. 2d 481; *Moss v. Burkhart,* 207 F. Supp. 885; *Hume v. Mahan,* 1 F. Supp. 142.) While in some of these cases the courts spoke in the context of at-large elections of national congressmen rather than State legislators, we believe there is no tenable distinction and that the fundamental principles involved are the same.

Nor do we believe that the procedures prescribed by

House Bill No. 1 for carrying out an at-large election in any way infringe the fourteenth amendment. The Supreme Court of the United States has recently enunciated, in the case of *Gray* v. *Sanders,* 372 U.S. 368, the principle that equality in voting among all individuals and groups must be secured in State elections under the equal-protection clause. Concisely designated as the concept of "One man— one vote", the principle was expressed by the court as follows (372 U.S. at p. 379): "Once the geographical unit for which a representative is to be chosen is designated, all who participate in the election are to have an equal vote— whatever their race, whatever their sex, whatever their occupation, whatever their income, and wherever their home may be in that geographical unit. This is required by the Equal Protection Clause of the Fourteenth Amendment. The concept of 'we the people' under the Constitution visualizes no preferred class of voters but equality among those who meet the basic qualifications. The idea that every voter is equal to every other voter in his State, when he casts his ballot in favor of one of several competing candidates, underlies many of our decisions."

Both in the nomination and election of representatives under House Bill No. 1. equality among all voters of the State is assured and no discrimination against any individuals, groups or classes will occur. Delegates to the State-wide nominating conventions will cast votes fairly weighted according to the number of party electors they represent; at the general election, each elector's vote will be equal to that of all others in electing the membership of the House. In our view, it would be difficult to envisage a system of nomination and election that is in closer harmony with the Federal "one man—one vote" concept.

The petitions for writs of *mandamus* fail to present any grounds or reasons to justify the relief requested, and the petitions are accordingly denied.

*Writs denied.*