(No. 39201.—

THE PEOPLE *ex rel.* William J. Scott *et al.*, Petitioners v. OTTO KERNER, Governor, *et al.*, Respondents.

*Opinion filed June 4, 1965.*

540

SCHAEFER, J., dissenting.

KIRKLAND, ELLIS, HODSON, CHAFFETZ & MASTERS, of Chicago, (DON H. REUBEN, of counsel,) for petitioners.

WILLIAM G. CLARK, Attorney General, of Springfield, (RICHARD A. MICHAEL, Assistant Attorney General, of counsel,) for respondents.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

Leave was granted to file this original *mandamus* petition in which the petitioners include residents and electors in several of the congressional districts in this State and the Treasurer of the State of Illinois, who, as such officer, is a member of the State Electoral Board. Respondents are

the Governor, Secretary of State, Attorney General and Auditor of Public Accounts, who, with the State Treasurer, constitute the State Electoral Board.

The petition alleges the congressional districts established by the General Assembly in 1961 (Ill. Rev. Stat. 1963, chap. 46, par. 156f.1,) contravene the Federal constitutional requirements (U.S. Const., art. I, sec. 2,) of substantial equality of population as that rule has been interpreted in *Wesberry* v. *Sanders,* 376 U.S. 1, 11 L. ed. 2d 481, 84 S. Ct. 526, in that the population of such districts, as established by the 1960 census, varies substantially, the greatest disparity apparently existing between the Tenth Congressional District with a 1960 census population of 552,582, and the Sixth District with a population of 278,703 (each, of course, elects one congressman). Other allegations are as to the duties of the electoral board in connection with the 1966 congressional elections, the pendency of two Federal court actions involving the constitutionality of Illinois's Congressional Apportionment Act, and the necessity for decision as to the constitutionality of existing districts prior to adjournment of the present session of the General Assembly so that body may have an opportunity to redistrict the State. The prayer is that this court command the electoral board not to conduct an election pursuant to the present districting scheme, and that we retain jurisdiction to insure that the 1966 election of congressional representatives is pursuant to a constitutionally valid plan.

A motion to dismiss this petition was filed by the Attorney General asserting that the real nature of the proceeding was that of an action for declaratory judgment and injunction. Subsequently an amendment to the petition added allegations that candidates for representative in Congress and their supporters might circulate nominating petitions now or at any time hereafter; that such persons are currently furnished by the Secretary of State with information, instructions and copies of statutes relating to

such procedures; that such instructions and statutes direct prospective candidates to petition from within the present allegedly unconstitutional districts; that the effect of this action is to mislead the public and potential candidates into securing nominating petitions which must subsequently be rejected by the electoral board. The amendment requested issuance of the writ of *mandamus* directing the Secretary of State to advise inquirers that petitions should not be circulated in existing districts; to inform such persons that present districts are unconstitutional and that no petitions from such districts will be accepted for filing but that only petitions from districts yet to be created will be accepted.

Respondents' objections to the propriety of the amendment were overruled, leave granted to respondents to answer, the motion ordered taken with the case and the issues declared closed. The case is therefore before us on the amended petition, reserved motion to dismiss and the answer of respondents which urges the pendency of the Federal suits as grounds for dismissal of this action.

The issues presented here are: (1) Does the amended petition state a cause of action in *mandamus*? (2) Is the pendency of the Federal actions a bar to this proceeding? (3) Is the present Congressional Apportionment Act constitutional? (4) If not, should this court retain jurisdiction to insure the availability of a constitutionally valid plan for the 1966 elections?

Respondents argue that this proceeding was improperly filed as an original *mandamus* action since it is, in reality, a suit for declaratory judgment and injunction not included within our constitutional grant of original jurisdiction which is limited to *mandamus*, prohibition, *habeas corpus* and actions relating to the revenue. (Ill. Const. of 1870, art. VI, sec. 5.) They urge that a prerequisite to a *mandamus* action is a duty on the part of a public official which has been violated prior to commencement of the action, relying on *People ex rel. Heydenreich* v. *Lyons,* 374 Ill. 557, 567. They

also urge, and we agree, that the writ is awarded to compel the performance of an affirmative duty, not to prohibit action. As was pointed out in *Ehrlich* v. *Village of Wilmette,* 361 Ill. 213, 221 : "* * * injunction and *mandamus* are not correlative remedies in the sense of being applicable to the same subject matter, the choice of the writ to be resorted to in a particular case depending upon whether there is an excess of action to be restrained or a defect to be supplied." As to the members of the electoral board other than the Secretary of State, the only relief requested is that they be commanded "not to conduct an election pursuant to" present statutory districting. It is clear that their first duties arise some six months hence, "not less than sixty-one (61) days prior to the date of the primary" when they are to meet and examine the petitions for nomination (Ill. Rev. Stat. 1963, chap. 46, par. 7—14). Moreover, no affirmative action is presently requested of them. The prayer is solely for prohibitory action and the absence of a basis for affirmative relief compels us to conclude that the writ of *mandamus* may not presently be awarded as to them. However, merely because a petitioner has asked for relief which he cannot obtain does not render the *mandamus* petition insufficient where he has also asked for some relief which he shows himself clearly entitled to receive. (26 I.L.P., Mandamus, par. 146.) Here, petitioners, in the amended petition, have requested sufficient affirmative mandatory relief to preclude the dismissal of the suit on jurisdictional grounds.

It is alleged in the amended petition, and nowhere denied, that, although the Secretary of State has asserted, in the pending Federal court proceedings hereinafter referred to, the unconstitutionality of the Congressional Apportionment Act, he is currently distributing copies thereof to the inquiring public and informing them that nominating petitions should be circulated within the existing congressional districts. Since these allegations are not specifically denied, they must be deemed admitted. (Ill. Rev. Stat. 1963,

chap. 110, par. 40.) It may well be that the Secretary of State is obligated to comply with a request, by one offering to pay the necessary fee, for copies of documents in his custody, even including unconstitutional laws, (Ill. Rev. Stat. 1953, chap. 124, par. 5,) but if the instant act be invalid, we believe petitioners have a clear right to have it so declared and to require the Secretary of State to so inform those who inquire of him or his staff in order that potential candidates and the public will not be misled.

Much is said in respondents' brief and suggestions in support thereof as to the necessity for a legal duty and breach thereof to exist before *mandamus* will lie to compel performance of such duty. While authority may be found so holding, particularly where *mandamus* is sought to enforce private rights, the same rigidity does not prevail in public matters of grave concern, and *mandamus* may be utilized as to prospective duties when the exigencies of the case so require and the facts and duties involved are not uncertain. (34 Am. Jur. Mandamus, sec. 79, p. 868.) While it can hardly be said that the Secretary of State is under a legal duty to determine the constitutional status of the Congressional Apportionment Act prior to a judicial declaration thereof, and, in that sense, his action in advising inquirers to circulate petitions in existing districts herein held unconstitutional is not violative of a duty existing prior to the announcement of this opinion, the existence of such duty, in a legal sense, if it be thought necessary might conceivably lie in the fact that the unconstitutionality of the present act renders it void *ab initio*. We prefer, however, since ample authority exists in our own decisions and elsewhere for the issuance of the writ in cases where the duty sought to be enforced first arises from the declaration of invalidity of the statute, announced in the decision awarding the writ, to place our conclusion upon this ground. To require, as some decisions do, that a determination of constitutionality must be made in a separate proceeding prior to the com-

mencement of the *mandamus* action simply necessitates a multiplicity of actions often incompatible with prevailing time limitations.

In the large majority of the recent cases, as well as many older ones, *mandamus* has been deemed an appropriate vehicle for the simultaneous determination of issues of statutory constitutionality and the enforcement of rights initially determined to exist in the proceeding awarding the writ. (*People ex rel. Barrett* v. *Barrett,* 31 Ill.2d 360; *People ex el. Giannis* v. *Carpentier,* 30 Ill.2d 24; *People ex rel. Spence* v. *Carpentier,* 30 Ill.2d 43; *People ex rel. Daniels* v. *Carpentier,* 30 Ill.2d 590; *People ex rel. Nachman* v. *Carpentier,* 30 Ill.2d 475; *People ex rel. Broomell* v. *Board of Election Commissioners,* 343 Ill. 66.) While the writ was not awarded in all of these cases (depending on whether the challenged statute was sustained or invalidated) all parties thereto and this court apparently viewed *mandamus* as a proper action since no question as to its propriety appears to have been raised. We note, also, the presence, in a number of those cases, of the Attorney General and other members of the State Electoral Board who here urge dismissal on the ground that the present action is not, in reality, a *mandamus* action, and that they were either requesting or acquiescing in the use of *mandamus* for identical purposes under indistinguishable factual situations insofar as concerns the existence of and failure to perform legal duties prior to commencement of the action. Illustrative of these are *Giannis* and *Spence,* in both of which there was no pre-existing legal duty and breach thereof by the public officials as to whom the writ was sought, and in both of which the Attorney General requested that *mandamus* issue. The situation here is indistinguishable in principle from that in *Nachman* where the Secretary of State was proposing to follow an unconstitutional statute which had not, at the time *mandamus* was sought, been so declared, and we issued the writ compelling withdrawal of a staff directive requiring ad-

herence to the statute we there held invalid. And, as was said in *People ex rel. Broomell* v. *Board of Election Commissioners,* 343 Ill. 66, 68-69: "[T]his court has held that where  *  *  *  an election law is inconsistent with and repugnant to existing conditions of the law so as to render the  *  *  *  [law]  *  *  *  inoperative and dangerous, this court will declare  *  *  *  [it]  *  *  *  void and by *mandamus* order the proper officer to disregard it."

It is therefore apparent that, where public issues of serious concern require speedy resolution, this court and others have not hesitated to act in *mandamus* even though the duty upon which the action is predicated existed prior to commencement of the action only in a fictional sense, and was, in reality, created by the decision which awarded the writ to enforce performance of the duty. See cases above cited and *Fooshee* v. *Martin* (Okla.), 88 P.2d 900, 902; *State ex rel. Morris et al.* v. *Wrightson* (N.J.), 28 Atl. 56; *Booz* v. *Reed* (Pa.), 157 A.2d 170.

We believe that the Secretary of State is, as of the announcement of this decision, under a present and continuing duty to advise those inquiring that the existing congressional apportionment statute is unconstitutional and hence void, that no nominating petitions circulated within the existing districts will be accepted by the electoral board for certification, and that future congressional elections must be conducted pursuant to a constitutionally valid plan yet to be devised, and that the writ of *mandamus* is therefore properly awardable.

It is further contended by respondents that since identical causes are pending in a Federal district court, this cause should be dismissed pursuant to section 48(1)(c) of the Civil Practice Act (Ill. Rev. Stat. 1963, chap. 110, par. 48(1)(c)). Although it has been stated that the provisions of the Mandamus Act (Ill. Rev. Stat. 1963, chap. 87, par. 1 *et seq.*), which state that the Civil Practice Act shall govern in *mandamus* actions unless specifically excepted, are not

applicable to proceedings in the Supreme Court (*People ex rel. O'Connor* v. *Haas,* 239 Ill. 320), we believe more compelling reasons preclude the application of the dismissal rule here. It is clear that all parties to this suit are not parties to those in the Federal court, and *vice versa,* which is specifically required by the unambiguous language of section 48(1)(c). Moreover, we have stated previously, and reaffirm here, that we believe the initial responsibility for resolving State reapportionment problems properly lies with State agencies. *People ex rel. Engle* v. *Kerner,* 32 Ill.2d 212.

While it is affirmatively alleged in the amended petition that present congressional districts are unconstitutionally apportioned and this fact is apparently conceded by respondents, no judicial pronouncement of this conclusion has been made. In *Wesberry* v. *Sanders,* 376 U.S. 1, 11 L. ed. 2d 481, 84 S. Ct. 526, the United States Supreme Court held the Georgia statute prescribing congressional districts, some of which contained two and three times as many residents as others, violated article I, section 2 of the United States Constitution. In reaching its result there, and in *Gray* v. *Sanders,* 372 U.S. 368, 9 L. ed. 2d 821, 83 S. Ct. 801, that court used language which conclusively establishes the invalidity of Illinois's present districts in which the smallest contains approximately one half the population of the largest. While some of the districts, as presently constituted, are undoubtedly within a permissible variance from the statewide average computed under the 1960 census figures, it is clear that to hold the apportionment statute valid as to such districts and invalid as to those in which the variance is greater would create a chaotic situation in redistricting. It is equally clear that the General Assembly would have adopted the act only as a unit. (See *People ex rel. Adamowski* v. *Wilson,* 20 Ill.2d 568.) We therefore hold that the present congressional districting scheme (Ill. Rev. Stat. 1963, chap. 46, par. 156f.1,) is totally invalid.

We regard as appropriate petitioners' request that we

retain jurisdiction of this cause. As in *People ex rel. Engle v. Kerner,* 32 Ill.2d 212, we trust that the legislature, prior to its adjournment, will adopt a constitutionally proper system of congressional districting. The possibility of failure (*People ex rel. Spence v. Carpentier,* 30 Ill.2d 43), however, convinces us that realism requires a consideration of alternatives for which no constitutional or statutory directive now exists. There is some judicial indication (*Maryland Committee for Fair Representation v. Tawes,* 377 U.S. 656, 676, 12 L. ed. 2d 595, 84 S. Ct. 1429, 1440; D.C. ruling affirmed in *Reynolds v. Sims,* 377 U.S. 533, 12 L. ed. 2d 506, 84 S. Ct. 1362) that State legislative bodies by 1966 ought to be elected pursuant to a constitutionally valid plan. Considerations motivating this conclusion as to State legislatures might well be applied to congressional representatives. It therefore seems desirable that provision be made during 1965 to insure that a plan, provisional or otherwise, free from constitutional objection becomes law. Should the General Assembly fail to redistrict, the task must be performed by some other agency or an at-large election held for all representatives in Congress.

Historically and logically, State agencies have been looked upon as the proper source for resolution of State apportionment problems. In *Scott v. Germano;* 381 U.S. 407, 14 L. ed. 2d 477, the United States Supreme Court, on June 1, 1965, in accordance with its earlier expression in *Tawes,* (377 U.S. at 674, 84 S. Ct. at 1439) and *Scranton v. Drew,* 379 U.S. 40, 13 L. ed. 2d 107, 85 S. Ct. 207, resolved conflicting jurisdictional opinions between this court and a Federal district court, regarding constitutionally required reapportionment of one of our State legislative bodies, in favor of this forum, notwithstanding the prior pendency of similar litigation before the Federal court. We believe the same considerations apply equally here, and that, hence, it is, in the first instance, the responsibility of this court to retain jurisdiction herin for the purpose to taking

such action as may be necessary to insure that the 1966 election of Illinois representatives in Congress is conducted in accordance with Federal constitutional principles.

While the extent of the action which this court may be obligated to undertake in the event we must devise a provisional scheme of congressional reapportionment cannot be accurately foreseen, it is not unreasonable to conclude that retention of jurisdiction as to all parties, as well as the subject-matter, is desirable. Implementation of a plan so devised may well be facilitated and expedited by such retention of jurisdiction since the members of the State Electoral Board would at least be proper, if not indispensable, parties to such proceedings. (See *People ex rel. School District 118* v. *Reinhardt,* 21 Ill.2d 153; *People ex rel. Perry* v. *Koerner,* 365 Ill. 521.) We therefore conclude that our retention of jurisdiction shall include all parties hereto.

The motion to dismiss the petition is denied, and the writ of *mandamus* is awarded as to the Secretary of State, commanding him to advise all those who inquire that paragraph 156f.1 of the Congressional Apportionment Act is unconstitutional and of no effect; that nominating petitions for representative in Congress should not be circulated in the districts as set forth therein; that no petitions so circulated will be accepted for filing; and that petitions should be circulated in districts yet to be created.

*Motion to dismiss denied; writ awarded as to Secretary of State; jurisdiction retained.*

Mr. JUSTICE SCHAEFER, dissenting:

I concur in the opinion of the court insofar as it holds that the petition for *mandamus* as initially filed did not state a case within the original jurisdiction of this court, and insofar as it rejects, *sub silentio,* the argument of the relators that this court should refuse "to be fettered from originally hearing the case by the archaisms of common law *mandamus.*" But in my opinion the deficiencies of the original

petition for *mandamus* were not remedied by the amendment, and the case is therefore not a proper one for the exercise of the original jurisdiction of this court.

The constitution confers original jurisdiction on this court in these terms: "The Supreme Court may exercise original jurisdiction in cases relating to the revenue, mandamus, prohibition and habeas corpus, such original jurisdiction as may be necessary to the complete determination of any cause on review, and only appellate jurisdiction in all other cases." (Article VI, sec. 5.) This court has original jurisdiction of the present case only if it is a *mandamus* action.

"The purpose of the extraordinary writ of *mandamus* is to compel the performance of a ministerial duty which one charged with the duty has refused to perform. The writ can only be issued to compel a party to act when it was his duty to act without it. It confers upon the party against whom it may be issued no new authority, and from its very nature can confer none. (*People* v. *Gilmer,* 5 Gilm. 242; *City of Ottawa* v. *People,* 48 Ill. 233; *People* v. *Cline,* 63 id. 394.)" *People ex rel. Bruce* v. *Dunne,* 258 Ill. 441, 446-47.

*Mandamus* lies to enforce an existing duty, not to create a nonexistent one. The section of American Jurisprudence relied upon by the majority does not deal at all with the problem that is now before the court. The distinction is between the use of the writ to enforce a duty that is prospective in the sense that it is to be performed in the future, which is what the section relied upon is concerned with, and the use of the writ to create a duty that never existed, which is what the opinion of the court does. The statement in American Jurisprudence is as follows:

"§ 79. *Prospective or Anticipated Violation of Duty*— Mandamus is used to compel the performance of a present existing duty as to which there has been an actual default, and it is not granted to take effect prospectively. The writ,

that is, will not ordinarily be awarded to compel the performance of an act unless the act is one which is actually due from the respondent at the time of the application. Until the time arrives when the duty should be performed, there is no default of duty; and mere threats not to perform the duty will not, as a rule, take the place of default. So, it has been stated that mandamus will not be issued in anticipation of supposed omission of duty, however strong the presumption may be that the person whom it is sought to coerce by the writ will refuse to perform his duty when the proper time arrives. This, however, is a general rule merely and does not prevent the use of mandamus to control the performance of prospective duties where the exigencies of the case demand it. If the law imposing the duty sought to be enforced is clear and unambiguous and the facts undisputed, mandamus will sometimes be granted where the respondent officer clearly manifests an intention not to perform the act in question. It has also been held that it cannot be said in a mandamus proceeding to compel a railroad to perform its duty to sprinkle certain streets of a city that the question is a moot one because the proceeding is heard at a time during certain months when such sprinkling is not required, upon the ground that when next required the company may do its duty, where it appears that it has refused to do so for over five years. So, as regards the levy of a tax, it has been held that mandamus may issue to coerce the public officers as to their future action, although the time for the levy has not arrived, when it clearly appears from their past conduct that they will disregard their duty in this respect." 34 Am. Jur., Mandamus, sec. 79, p. 868.

Of the decisions of this court relied upon by the majority, *People ex rel. Giannis* v. *Carpentier,* 30 Ill.2d 24, did not involve the exercise of the original jurisdiction of this court. The others, and particularly *People ex rel. Nachman* v. *Carpentier,* 30 Ill.2d 475, dealt with the present assertion of a duty to be performed by election officials in the future,

and in that sense they did not involve an existing duty. But in each case there was no question that when the election day arrived it would be the duty of the respondents to handle that aspect of the election proceeding which was in dispute. Each case concerned the nature of the official's duty rather than its existence. The question in several of the cases, for example, was whether the respondents were required to conduct the 1964 election at large or according to the 1955 apportionment. But in all of them the duty to conduct the election existed before the decision of this court was rendered, and in none of them did the jurisdiction of this court depend upon the creation of the duty.

The statutes from which the court distills the duty it creates impose only custodial and ministerial duties upon the Secretary of State. Section 3 of the act of 1874 concerning the duties of the Secretary of State provides: "All public acts, laws and resolutions passed by the General Assembly of this state, shall be carefully deposited in the office of the Secretary of State, and the Secretary of State is charged with the safety of said office, and all laws, acts, resolutions, bonds, papers and records which now are or shall hereafter be deposited therein." (Ill. Rev. Stat. 1963, chap. 124, par. 3.) Section 5 of the same act provides: "It shall be the duty of the Secretary of State—* * * 6. To give any person requiring the same paying the lawful fees therefor, a copy of any law, act, resolution, record or paper in his office, and attach thereto his certificate, under the seal of the state." Ill. Rev. Stat. 1963, chap. 124, par. 5.

The statutory duty to furnish upon request a certified copy of "any law, act, resolution, record or paper in his office" upon payment of the lawful fee therefor does not embrace a legal duty to pass upon the legality or validity of any of those documents.

Although the opinion of the court is somewhat equivocal, it apparently rejects the contention of the relators that these statutes make it the duty of the Secretary of State, who is

not required to be a lawyer, to determine the constitutionality of legislation and to distribute only those laws that he finds constitutional. I should have thought that if the legislature had passed a statute that expressly made it the duty of the Secretary of State to determine the constitutionality of legislation and to distribute only those laws that he found constitutional, this court would, without doubt, have declared the statute invalid as a violation of the constitutional provision concerning the separation of governmental powers. See *State ex rel. Martin* v. *Zimmerman* (1939) 233 Wis. 16, 288 N.W. 454.

The theory that the majority advances *sua sponte* is equally unsound. The statute which everyone agrees is unconstitutional in the present case is not of course the only statute that has been, or will be, held invalid by this court. Unless the duty that the court creates is to be regarded as for some reason applicable only in the present case, it will be the duty of the Secretary of State to render legal advice to all persons seeking copies of the laws in all cases in which any court has held a statute wholly or partially invalid. Clerks of cities and villages, and other officials of local governments, have the same custodial duties and the same duties to distribute copies of ordinances and other official documents. The duty created by the court in order to expand its original jurisdiction in this case would apply to them as well as to the Secretary of State, and they, too, will be required not only to advise as to the effect of decisions of this court, but of the circuit court and all federal courts as well. The legislature has not thought it wise or necessary to impose these duties, and their imposition by this court seems to me to be as much a violation of separation of powers as would be the duty which the relator by amendment to his petition sought to impose upon the Secretary of State.