(Nos. 35908, 35909, 35910, 35911, Cons.—

THE PEOPLE *ex rel.* BENJAMIN S. ADAMOWSKI, State's Attorney, Appellant, *vs.* ORLANDO W. WILSON *et al.*, Appellees.

*Opinion filed December 1, 1960.*

BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRANCIS X. RILEY, EDWARD J. HLADIS, JAMES R. THOMPSON, and ALAN S. GANZ, Assistant State's Attorneys, of counsel,) for appellant.

JOHN C. MELANIPHY, Corporation Counsel, of Chicago, (SYDNEY R. DREBIN, and EDWARD E. PLUSDRAK, Assistant Corporation Counsel, and ROBERT J. COLLINS, Special Assistant Corporation Counsel, of counsel,) for appellees.

Mr. CHIEF JUSTICE SCHAEFER delivered the opinion of the court:

We have consolidated for review in this court four actions in *quo warranto* which attack the reorganization of the police department of the city of Chicago which took place in March of 1960. The actions were instituted by the State's Attorney of Cook County. They question the power of the city to establish a Police Board to supervise and control its police department and they challenge the authority of the city council to abolish the office of commissioner of police prior to December 31, 1960. They also

attack the qualifications of Franklin M. Kreml and Paul W. Goodrich to serve as members of the Police Board and the qualifications of Orlando W. Wilson to serve as administrator for the board and superintendent of police. After hearings the circuit court of Cook County dismissed the complaints and the plaintiff has appealed. We have jurisdiction on direct appeal because in one case the validity of a statute is involved, and in each of the other three cases the validity of a municipal ordinance is involved and the trial judge has certified that the public interest requires a direct appeal to this court. Ill. Rev. Stat. 1959, chap. 110, par. 75.

Early in January of 1960 serious charges of criminal misconduct were made against many members of the police department of the city of Chicago. The Commissioner of Police resigned, and an acting commissioner was appointed. The mayor of Chicago appointed an advisory committee composed of Orlando W. Wilson, dean of the School of Criminology of the University of California, General Franklin M. Kreml, head of the Transportation Center at Northwestern University, Virgil Peterson, executive director of the Chicago Crime Commission, Paul W. Goodrich, president of the Association of Commerce and Industry and president of the Chicago Title and Trust Company, and William L. McFetridge, president of the Building Service Employees International Union and vice-president of the AFL-CIO. This committee was charged with the duty of making policy recommendations concerning the organization and conduct of the police department, and recommending "the best qualified available man to be found in this country" to administer its affairs. The committee studied the problems of police administration in Chicago. It also interviewed 24 members of the Chicago police department, 3 other residents of Chicago, and 10 persons residing outside of Illinois. In addition, it considered 53 applications from, and nominations of, persons whom it

did not consider qualified and did not interview. The committee's report to the mayor recommended the adoption of an ordinance establishing a Police Board at the head of the police department, and an administrator to administer the affairs of the department under the direction of the board. It recommended the appointment of Orlando W. Wilson as administrator.

On March 2, 1960, the city council adopted an ordinance which embodies the recommendations of the advisory committee. The ordinance established a Police Board of five members to be appointed by the mayor, by and with the advice and consent of the city council. It provided for staggered terms for the members of the board, who serve without compensation and "may be removed by the Mayor as provided by law."

Sections 11-3, 11-4 and 11-5 of the ordinance are as follows:

"Sec. 11-3. The Board shall have power to supervise and control the department and to make and enforce all necessary and desirable rules and regulations therefor, and direct the Superintendent of Police in the management of the department. It shall have such additional powers and perform such other duties as may be granted or imposed elsewhere by ordinance not in conflict herewith.

"Sec. 11-4. The Board shall make nominations for Superintendent of Police for approval and appointment by the Mayor.

"Sec. 11-5. The Superintendent of Police shall be the chief administrator of the police department under the direction of the Board. The Superintendent shall not be a member of the Board. The Board may issue instructions to the Superintendent concerning his exercise of any of the powers conferred upon him. The Board may remove the Superintendent for cause, provided that he shall be given previous written notice of the grounds of the proposed removal and an opportunity to be heard by the Board at a regular meeting."

On March 4, 1960, the mayor appointed Paul W. Goodrich, Morgan Murphy, Franklin M. Kreml, Theophilus M. Mann and William L. McFetridge as members of the Police Board, and the city council approved the appointments.

The Board organized, selected Franklin M. Kreml as its president and transmitted to the mayor its nomination of Orlando W. Wilson as Administrator and Superintendent of Police. The mayor appointed the Board's nominee.

The most fundamental of the objections raised by the plaintiff is that the city of Chicago lacks the power to establish a Police Board with authority to supervise and control its police department, and we turn at once to that problem. The plaintiff's position is that by statute the city is required to vest responsibility for police administration in an individual officer and may not vest that responsibility in a board of officers. The relevant statutory provisions are contained in sections 9—14, 9—16, 23—1, and 23—78 of the Revised Cities and Villages Act. (Ill. Rev. Stat. 1959, chap. 24, pars. 9—14, 9—16, 23—1, and 23—78.) In pertinent part they read as follows:

"9—14. By ordinance passed by a two-thirds vote of all the aldermen elected, the city council, in its discretion, may provide for the election by the electors of the city, or for the appointment by the mayor, with the approval of the city council, of a city collector, a city marshal, a city superintendent of streets, a corporation counsel, a city comptroller, or any of them, and any other officers which the city council considers necessary or expedient. * * *."

"9—16. * * * The city council, by ordinance not inconsistent with this Act, may prescribe the duties, define the powers, and fix the term of office of all such officers; but the term of office shall not exceed that of the mayor."

"23—1. The corporate authorities of a municipality shall have the powers enumerated in Sections 23—2 to 23—115 inclusive."

"23—78. To prescribe the duties and powers of all police officers."

Under these provisions the city council is authorized to provide for such city officers as it considers necessary or expedient, and to prescribe their duties and define their

powers. The authority thus granted to the city has been described as "broad and plenary." (*Sheridan* v. *Colvin,* 78 Ill. 237, 245.) The plaintiff would read into this broad grant of power to establish the internal structure of the government of the city a prohibition against the use of a board composed of several officers as an agency of local government. He states that "Government by an officer and government by a board are concepts or philosophies which are generically incompatible." And he asserts that in *People ex rel. Barmore* v. *Robertson,* 302 Ill. 422, this court emphasized "the sharp dichotomy between the power of the city council to establish an office and the power to create a board."

The *Robertson case* involved the validity of a quarantine established by the health commissioner of the city of Chicago. The court said: "Whatever may be best, the legislature of Illinois has said that the public health of cities shall be regulated and guarded by a board of health, and until the legislature grants to cities the power to supervise the sanitary and health conditions of the city by another instrumentality the cities must content themselves with the power that has been given to them. The city council had no authority to delegate to a health officer the powers and duties which the legislature said it might delegate to a board of health. The powers given to boards of health are extraordinary, and the legislature was evidently unwilling to leave to one person the determination of such important and drastic measures as are given to such boards. In the judgment and fidelity of a greater number acting together is the greatest security against the abuse of extraordinary power." 302 Ill. at 435.

Because this court held in the *Robertson case* that power which the legislature had said was to be exercised by a board of health could not be exercised by an individual, the plaintiff argues that the city may not create an administrative board without specific statutory authority.

This court, however, has taken a contrary view. In *People ex rel. Johns* v. *Thompson,* 341 Ill. 166, the power of the city council of the city of Chicago to establish a public vehicle license commission for the regulation of taxicabs was challenged. No statutory provision expressly authorized the creation of such a commission. This court said, "The legislative branch of the State or city may delegate to an administrative board duties involving the exercise of administrative discretion." (341 Ill. at 169.) Subsequently, and again without specific legislative authority, the city council transferred the authority formerly exercised by the public vehicle commission to a single commissioner, and that action was challenged in *Yellow Cab Co.* v. *City of Chicago,* 396 Ill. 388. Referring to the *Thompson case* this court said : "The only material difference between the provisions of the ordinance there questioned and the ordinances here, as to the delegation of power, is that in that case the power was given to a commission. We do not regard this difference as being material, inasmuch as proper standards for the action of the commissioner have been established by the ordinances." 396 Ill. at 402.

The use of a board of officers instead of an individual officer in the performance of governmental functions is entirely familiar. In the past, before section 22 of article IV of the constitution of 1870 prohibited special legislation, the General Assembly itself provided for administration of the Chicago police department by a Police Board. (See *Sheridan* v. *Colvin,* 78 Ill. 237, 245.) The choice between administration by an individual and administration by a board is made by weighing considerations of relative expediency. The broad powers granted by the General Assembly to the city council to allocate responsibility for the operation of the city government to such city officers, with such powers and duties, as it determines to be necessary or expedient, authorize it to determine whether to commit a particular segment of the city's government to an indi-

vidual officer, or to a board of officers. The city therefore did not lack the power to establish a police board.

Another contention of the plaintiff is that the office of Commissioner of Police could not be abolished before December 31, 1960, when the city's fiscal year ends. With reference to the abolition of an office by the city council, section 9—14 of the Revised Cities and Villages Act provides: "By ordinance or resolution, to take effect at the end of the current fiscal year, the city council, by a like vote, may discontinue any office so created, and devolve the duties of that office on any other city officer. After such discontinuance, no officer filling any office so discontinued shall have any claim against the city for salary alleged to accrue after the date of discontinuance. However, in any city having a population of less than 10,000 as determined by the last preceding federal census in which the city council has provided for the appointment of a city collector, the city council may provide by ordinance that the city clerk shall hold the office of city collector." Ill. Rev. Stat. 1959, chap. 24, par. 9—14.

The fiscal year of the city of Chicago commences on January 1. (Ill. Rev. Stat. 1959, chap. 24, par. 1—2(5).) It is undisputed that the office of the Commissioner of Police existed on March 2, 1960, when the reorganization ordinance was adopted, and that the duties of that office devolved upon the Police Board. The plaintiff argues that since the new ordinance gives the Police Board the powers formerly reposed in the office of Commissioner of Police, the Board cannot come into existence until January 1, 1961. The defendants argue that because the city appropriations run to the Department of Police, the "office" to which the statute refers must be the Department of Police, and since that Department is still in existence, no office has been discontinued during the fiscal year.

We are unable to accept the argument of the defendants, which substitutes the word "department" for the word

"office." On the other hand, we are not satisfied that the plaintiff's argument, based as it is upon a literal reading of the statute, is determinative. Both parties agree, and we think correctly, that the statute is grounded upon fiscal considerations. It is apparent from the statute as it now reads that a primary concern of the General Assembly was with the salary claims of officers whose offices had been discontinued. That concern is even more apparent from the phrasing of the original provision as it read before the statute was revised as to form by the Revised Cities and Villages Act of 1941: "The city council may, by a like vote, by ordinance or resolution, to take effect at the end of the then fiscal year, discontinue any office so created, and devolve the duties thereof on any other city officer; and no officer filling any such office so discontinued, shall have any claim against the city on account of his salary, after such discontinuance." Il. Rev. Stat. 1939, chap. 24, par. 85, *cf.* 1959, chap. 24, par. 9—54.

In the present case it is clear that no valid claim can be asserted against the city on account of salary for the office of Commissioner of Police, whether or not that office is regarded as discontinued on March 2, 1960. The commissioner resigned in January of 1960. He thereby relinquished all right to the office, (see *People ex rel. Adamowski* v. *Kerner,* 19 Ill.2d 506,) and regardless of the abolition of the office, he would not be entitled to compensation that might otherwise have accrued to the incumbent. (*Kelly* v. *Chicago Park District,* 409 Ill. 91, 95; see *Howell* v. *City of Gillespie,* 202 Ill. App. 447.) Nor does it appear that the city has suffered any other financial loss by reason of the discontinuance of that office. The Police Board assumed the duties that were formerly imposed upon the Commissioner of Police, and the ordinance creating the board provides that its members shall serve without compensation. It is true that Wilson's compensation, as administrator for the board and superintendent of police, is $30,000,

whereas the salary of the commissioner was $22,500. But Wilson is paid under a contract with the city which provides that he shall, in addition to his duties as superintendent and administrator for the board, make surveys looking toward the further reorganization of the police department. His unique qualifications to make such recommendations are admitted. No such obligation was imposed upon the commissioner. We think, therefore, that it cannot be said that any additional financial burden has been imposed upon the city by the reorganization.

In addition to its explicit concern with potential claims against the city by reason of the discontinuance of an office, the statute may also be regarded as indicating a legislative desire to secure tenure in office by providing safeguards against the elimination of an officer by a transfer of the functions of his office. In this respect also, however, it is apparent that there is no interference with the tenure of any city officer, because the office of commissioner of police was vacant on March 2, 1960, and has remained vacant.

In the circumstances of this case, therefor, none of the considerations which prompted the General Assembly to prohibit the discontinuance of an office during the fiscal year are present.

The question, then, is whether a judgment of ouster should issue to defer the effective date of the reorganization ordinance until December 31, 1960, when it will become effective in any event. (*Cf. Graham* v. *Dye,* 308 Ill. 283; *People ex rel. Murray* v. *Holmes,* 341 Ill. 23.) Both our decisions and those of other courts have recognized that *quo warranto* is a high prerogative writ, and that in administering the remedy courts "should proceed with due deliberation and caution, and the exercise of sound discretion." (*People* v. *White Circle League of America,* 408 Ill. 564, 568.) Among the factors consistently emphasized in describing the discretionary authority of a court to allow or deny the remedy are "whether the public interest will be

served or damaged by the writ and the necessity for and policy of allowing the remedy." (*People ex rel. Prather* v. *Miller,* 331 Ill. 395, 399; see *People ex rel. Wetz* v. *Hepler,* 240 Ill. 196, 200.) "The court may exercise this discretion and dismiss the proceeding or render judgment for defendant * * * where the rendition of a judgment of ouster would not be in the public interest, or serve any good end or purpose." 74 C.J.S., Quo Warranto, sec. 6; cf. 44 Am. Jur., Quo Warranto, sec. 15; see *State ex rel. Miller* v. *Lane Rural High School Dist. No. 9,* 173 Kan. 1 (1952), 243 P.2d 232, 235; *Commonwealth ex rel. Koontz* v. *Dunkle,* 355 Pa. 493 (1947), 50 A.2d 496, 498; *City of Winter Haven* v. *State ex rel. Landis,* 125 Fla. 392 (1936), 170 So. 100, 108; *State ex rel. Watkins* v. *Fernandez,* 106 Fla. 779 (1932), 143 So. 638, 640.

In this case it is clear that the public interest would not be served, but would be seriously impaired, by the entry of a judgment of ouster upon the ground that the reorganization ordinance does not become effective until December 31, 1960. As we have seen, no financial loss to the city has been occasioned, and there has been no interference with the tenure of any officer. The members of the Police Board have been administering the affairs of the police department as *de facto* officers since March. To oust them so that they can take office on January 1, 1961, would serve no useful purpose.

The plaintiff further contends that under section 9—87 of the Revised Cities and Villages Act, two members of the Police Board, Franklin M. Kreml and Paul W. Goodrich, are ineligible to hold that office. Section 9—87 provides: "No person shall be eligible to any municipal office unless he is a qualified elector of the municipality and has resided therein at least one year next preceding his election or appointment. However, in municipalities with less than 200,-000 population according to the last preceding Federal or State census, these requirements shall not apply to the

municipal engineer, health officers, or other officers who require technical training or knowledge. Nor shall these requirements apply to city attorneys in cities of 5,000 or less inhabitants or to village attorneys in villages. But no person shall be eligible to any municipal office who is a defaulter to the municipality." (Ill. Rev. Stat. 1959, chap. 24, par. 9—87.) Kreml is a resident of Evanston, and Goodrich is a resident of Wheaton. The plaintiff admits that they possess "technical training or knowledge" within the meaning of section 9—87, but urges that this is immaterial since the population of Chicago is in excess of 200,-000. The defendants contend that insofar as that proviso applies to all cities except Chicago, it is a local or special law, contrary to section 22 of article IV of the Illinois constitution, and so invalid.

Legislative classification based upon population is valid, if there is a reasonable relationship between the objectives sought to be accomplished by the law and the population differences fixed by the General Assembly. (*Du Bois* v. *Gibbons,* 2 Ill.2d 392, 399; *Gaca* v. *City of Chicago,* 411 146, 149.) But in the absence of such a relationship, legislative classification upon the basis of population is discriminatory and invalid. *Giebelhausen* v. *Daley,* 407 Ill. 25, 37; *Kremers* v. *City of West Chicago,* 406 Ill. 546, 551; *Hunt* v. *County of Cook,* 398 Ill. 412.

A plain objective of section 9—87 is to give municipalities the opportunity to utilize, in the management of municipal affairs, the services of those persons who have special technical training and knowledge without regard to their place of residence, and the question is whether the line drawn upon the basis of population is reasonably related to that objective. Chicago, with a population of about 3,500,000, is the only city in the State whose population exceeds 200,000. The meaning of the classification in this case, therefore, is that any city in the State, except Chicago, can avail itself of the services of Kreml, for example, who

is an internationally known expert on police administration. The city of Evanston, with a population of about 80,000, which adjoins Chicago on the north, can appoint residents of Chicago to office, but Chicago may not appoint residents of Evanston to office. The legislative classification can be sustained only upon the assumption that a city with a population of more than 200,000 will always have a sufficient number of residents and electors who have the precise technical training and knowledge that is needed, and who are available to serve as municipal officers.

But the kind of knowledge and technical training with which the statute is concerned is not centered exclusively in the largest cities. To make the point it is necessary to refer only to the University of Illinois, located in Champaign, which has a population of less than 60,000, and to Northwestern University, located in Evanston. Even if it could be assumed that a direct correlation exists between the population of a very large city and the number of persons of special competence who work there, the development of suburban living means that a substantial percentage of those persons will reside outside of the city. Because the population classification of section 9—87 operates, without discernible justification, to deprive the largest city, whose problems are more likely to be complex, of expert assistance which is available to all other cities, it violates the provisions of section 22 of article IV of the constitution.

The plaintiff does not attempt to support the validity of the population classification of section 9—87. Instead, his argument is that if the legislative classification by population which is contained in the second sentence of the section is invalid, that entire sentence must be eliminated, leaving in effect, so far as this case is concerned, only the sweeping prohibition of the first sentence. The defendant argues that only the invalid classification should be eliminated from the second sentence. The question thus presented is one of

separability. "The fact that a part of an act is unconstitutional does not require that the remainder shall be held void unless all the provisions are so connected as to depend upon each other. The valid and invalid provisions may even be contained in the same sentence and yet be perfectly distinct and separable so that the former may stand though the latter fall." (*McDougall* v. *Lueder,* 389 Ill. 141, 155.) If what remains after the invalid portion is stricken is complete in itself and capable of being executed wholly independently of that which is rejected, the invalid portion does not render the entire section unconstitutional unless it can be said that the General Assembly would not have passed the statute with the invalid portion eliminated. *Myers* v. *Krajefska,* 8 Ill.2d 322, 327-328; *Vissering Mercantile Co.* v. *Annunzio,* 1 Ill.2d 108, 123; *Grasse* v. *Dealer's Transport Co.* 412 Ill. 179, 202; *Baim* v. *Fleck,* 406 Ill. 193, 201; *City of Elmhurst* v. *Buettgen,* 394 Ill. 248, 254; *People ex rel. City of Highland Park* v. *McKibbin,* 380 Ill. 447, 451.

We think that the legislative history of section 9—87 demonstrates the intent of the General Assembly to enact the entire section without the invalid classification. As originally enacted, the section prohibited the holding of any municipal office by one who was not a qualified elector and who had not been a resident for at least one year. (Laws of 1871-1872, pp. 237-238.) The section was amended in 1895 and the office of city engineer was exempted. (Laws of 1895, pp. 95-96.) Then in 1917 the present exemptions were adopted, (Laws of 1917, p. 258,) and they have remained in the statute ever since. Legislative dissatisfaction with the sweeping prohibition of the first sentence of the section has thus been manifested for more than 60 years, and the legislative course shows a dominant purpose to facilitate the hiring of technical experts by municipalities as needed, without regard to residence. It seems clear, therefore, that the legislature would

not have intended to revert to the blanket prohibition which it has so long repudiated, but would have intended that the invalid classification be eliminated without affecting the balance of the section.

The plaintiff's final contention is that Wilson is barred from serving as administrator for the board and superintendent of police by section 6 of article VII of the Constitution, which provides: "No person shall be elected or appointed to any office in this state, civil or military, who is not a citizen of the United States, and who shall not have resided in this state one year next preceding the election or appointment." When he was appointed Wilson was a citizen and resident of California. The plaintiff's contention, however, assumes that Wilson is an officer of the city, and not an employee. The distinction between an officer and an employee is to be determined by a consideration of relevant circumstances, including the nature of the duties, functions or service to be performed and the power granted and wielded. (67 C.J.S., Officers, sec. 5.) Section 9—16 of the Revised Cities and Villages Act provides that "all officers of any city shall be appointed by the mayor by and with the advice and consent of the city council." (Ill. Rev. Stat. 1959, chap. 24, par. 9—16.) Under the ordinance Wilson was appointed by the mayor, without the advice and consent of the city council. The ordinance does not refer to his position as an "office," and no term of office was fixed. His salary was agreed upon by a contract and was not fixed by law. In the performance of his duties, he is subordinate to the Police Board, his actions are subject to its control and direction, and it may remove him for cause. For these reasons we are of the opinion that he is an employee, and not an officer.

The circuit court was correct in dismissing the complaints in *quo warranto* and its judgments are affirmed.

*Judgments affirmed.*