PAUL PALCEK, Plaintiff-Appellant, *v.* THE CITY OF CHICAGO HEIGHTS *et al.*, Defendants-Appellees.

First District (4th Division)   No. 78-1744

Opinion filed August 9, 1979.

Victor F. Ciardelli, of Chicago (Edward M. Duthaler and Edward M. Nicol, of counsel), for appellant.

Edwin A. Strugala, of Chicago, for appellees.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The plaintiff, Paul Palcek, was discharged from his position as a Chicago Heights police officer after that city's Board of Fire and Police Commissioners found him guilty of removing property from a store. He has appealed contending first that a statement used at the hearing was obtained from him without his being warned of his rights as required by certain statutes containing the rights of police officers and second, that the punishment was arbitrary in light of that meted out to certain officers charged in the same incident. Since we reverse because of the failure to give any warning, we do not reach the second contention.

The few pertinent facts are undisputed. After an anonymous tip, Lieutenant Douglas Barger was assigned to conduct an investigation of the alleged removal of property by some police officers from a certain store early in July 1977. On July 11, 1977, Lieutenant Barger telephoned Palcek at home and asked Palcek to meet him at the Alcazar Restaurant.

At the restaurant, Lieutenant Barger told Palcek that he wanted to question him about the incident. Palcek then blurted out that he had taken the property. Later the two men drove to Lieutenant Barger's home where Palcek reduced his previous oral statements to writing. These statements were introduced into evidence at the hearing over objection. Shortly before the hearing, Palcek admitted to another officer that he had taken the property. He said that Lieutenant Barger told him he needed something on another officer and that Palcek was to put in his report that he had given that officer some stolen articles.

Admittedly, at no time during Lieutenant Barger's questioning of Palcek at the Alcazar Restaurant or prior to Palcek's reduction of those statements to writing did Lieutenant Barger inform Palcek, either orally or in writing, as to what specific improper or illegal act he was alleged to have committed; nor did he advise Palcek, either orally or in writing, that any admissions Palcek made to him could be used as a basis for charges at a later disciplinary proceeding, nor did he advise Palcek, either orally or in writing, that he had a right to counsel of his own choosing to be present at any questioning. In fact, at oral argument, it was indicated that he was not informed of the specific charges until shortly before the hearing.

The Board, while only temporarily suspending the other officers charged, discharged Palcek. When the decision was appealed to the circuit court, the judge first remanded the case to the Board for reconsideration of the sentence, questioning its severity in light of those meted out to the other officers. When the Board reaffirmed its decision, the circuit court affirmed the decision and the plaintiff appealed to this court.

Partly for historical reasons which we shall not discuss, which statute governs the rights of a police officer is determined both by whether the community in which he serves is over a specific population and whether it has elected to be controlled by the civil service provisions of section 10—1—1 *et seq.* of the Municipal Code of 1961 (Ill. Rev. Stat. 1977, ch. 24, par. 10—1—1 *et seq.*) (hereinafter referred to as division 1). Thus three different statutes determine how a police employee or officer may be suspended or terminated.

Section 2—10—2.1—17 (Ill. Rev. Stat. 1977, ch. 24, par. 10—2.1—17), is applicable to communities of at least 5,000 and no more than 250,000 which are not subject to civil service (division 1) and to municipalities of less than 5,000 which have adopted division 2.1 of the Municipal Code. (Ill. Rev. Stat. 1977, ch. 24, par. 10—2.1—1 *et seq.*) It provides in part:

> "Except as hereinafter provided, no officer or member of the fire or police department of any municipality subject to this Division 2.1 shall be removed or discharged except for cause, upon written charges, and after an opportunity to be heard in his own defense. * * * The board of fire and police commissioners shall conduct a

fair and impartial hearing of the charges, to be commenced within 30 days of the filing thereof, which hearing may be continued from time to time. In case an officer or member is found guilty, the board may discharge him, or may suspend him not exceeding 30 days without pay. The board may suspend any officer or member pending the hearing with or without pay, but not to exceed 30 days. If the Board of Fire and Police Commissioners determines that the charges are not sustained, the officer or member shall be reimbursed for all wages withheld, if any. In the conduct of this hearing, each member of the board shall have power to administer oaths and affirmations, and the board shall have power to secure by its subpoena both the attendance and testimony of witnesses and the production of books and papers relevant to the hearing."

Section 10—1—18 (Ill. Rev. Stat. 1977, ch. 24, par. 10—1—18), is applicable to all municipalities controlled by division 1 except the city of Chicago and reads in part:

"Except as hereinafter provided in this section, no officer or employee in the classified civil service of any municipality who is appointed under the rules and after examination, may be removed or discharged, or suspended for a period of more than 30 days, except for cause upon written charges and after an opportunity to be heard in his own defense. Such charges shall be investigated by or before the civil service commission, or by or before some officer or board appointed by the commission to conduct that investigation. The finding and decision of that commission or investigating officer or board, when approved by the commission, shall be certified to the appointing officer, and shall forthwith be enforced by that officer. Before any officer or employee in the classified service of any municipality may be interrogated or examined by or before any disciplinary board, or departmental agent or investigator, the results of which hearing, interrogation or examination may be the basis for filing charges seeking his removal or discharge, he must be advised in writing as to what specific improper or illegal act he is alleged to have committed; *he must be advised in writing that his admissions made in the course of the hearing, interrogation or examination may be used as the basis for charges seeking his removal or discharge; and he must be advised in writing that he has the right to counsel of his own choosing present to advise him at any hearing, interrogation or examination*; and a complete record of any hearing, interrogation or examination shall be made and a complete transcript thereof made available to such officer or employee without charge and without delay. Nothing in this Division 1 limits the power of any officer to

suspend a subordinate for a reasonable period, not exceeding 30 days except that any employee or officer suspended for more than 5 days or suspended within 6 months after a previous suspension shall be entitled, upon request, to a hearing before the civil service commission concerning the propriety of such suspension. In the course of an investigation of charges, each member of the commission, and of any board so appointed by it, and any officer so appointed, may administer oaths and may secure by its subpoena both the attendance and testimony of witnesses, and the production of books and papers relevant to the investigation. ❋ ❋ ❋

❋ ❋ ❋

This Section does not apply to the suspension, removal or discharge of officers and civilian employees of the police department in the classified civil service of a municipality of more than 500,000 but that disciplinary action may be taken by the Police Board, rather than the civil service commission, as provided in Section 10—1—18.1." (Emphasis added.)

Section 10—1—18.1 (Ill. Rev. Stat. 1977, ch. 24, par. 10—1—18.1), applies to the city of Chicago and reads in part:

"In any municipality of more than 500,000 population, no officer or employee of the police department in the classified civil service of the municipality whose appointment has become complete may be removed or discharged, or suspended for more than 30 days except for cause upon written charges and after an opportunity to be heard in his own defense by the Police Board. Before any such officer or employee may be interrogated or examined by or before any disciplinary board, or departmental agent or investigator, the results of which hearing, interrogation or examination may be the basis for filing charges seeking his removal or discharge, *he must be advised in writing as to what specific improper or illegal act he is alleged to have committed; he must be advised in writing that his admissions made in the course of the hearing, interrogation or examination may be used as the basis for charges seeking his removal or discharge; and he must be advised in writing that he has the right to counsel of his own choosing present to advise him at any hearing, interrogation or examination;* and a complete record of any hearing, interrogation or examination shall be made and a complete transcript thereof made available to such officer or employee without charge and without delay." (Emphasis added.)

The provision in both sections 10—1—18 and 10—1—18.1 requiring warnings to be given before interrogation was added in 1969. No similar provision was ever added to section 10—2.1—17.

The city of Chicago Heights has a population of approximately 45,000. The parties on this appeal have assumed that section 10—2.1—17 is the controlling statute. There has been no evidence presented as to whether Chicago Heights has ever adopted division 1. Equally, while the defendants in their brief suggested that the city of Chicago Heights is under home rule and that its ordinances are controlling, they have never introduced these ordinances into evidence nor did they ask the court to take judicial notice of them. Accordingly, we must assume that section 10—2.1—17 is the controlling statute.

The defendants are correct that there is no due process question here and the plaintiff so concedes. (See *Douglas v. Daniels* (1978), 64 Ill. App. 3d 1022, 382 N.E.2d 90.) What the plaintiff does contend is that the requirements of section 10—1—18 and 10—1—18.1 must be read into section 10—2.1—17 under the doctrine of *in pari materia* and that if they are not, the classification is unreasonable and thus a denial of equal protection.

We agree.

The Illinois Supreme Court in *Kropel v. Conlisk* (1975), 60 Ill. 2d 17, 322 N.E.2d 793, ruled that the various statutory provisions in the Municipal Code relating to the removal and suspension of persons in the classified civil service were provisions *in pari materia*; two such sections are section 10—1—18.1 and 10—2.1—17. (*People ex rel. Paczkowski v. Conlisk* (1976), 38 Ill. App. 2d 106, 347 N.E.2d 96, *appeal denied* (1976), 63 Ill. 2d 562.) In *Kropel* a Chicago police officer was summarily suspended for 30 days. The supreme court recognized that the controlling statute, section 10—1—18.1 of the Municipal Code, if construed literally, failed to insure due process since it did not provide for a hearing if the suspension was for 30 days or less. However, it examined other sections of the Code including section 10—1—18 and section 10—2.1—17 and various rules and concluded that it is clear from these statutes and rules that the public policy of this State, regardless of any constitutional considerations, is that a disciplinary suspension of more than one week of scheduled working days cannot be levied without providing some means of review and that, therefore, the cited statute and rules should be considered *in pari materia*. It further noted that since it is clear that there are outer limits to the superintendent's power of suspension, and the public policy of this State has generally provided for some form of review of suspensions, if section 10—1—18.1 of the Municipal Code was to survive constitutional attack on due process and equal protection grounds, the court was required to construe it to provide for some manner of review of suspensions for less than 30 days.

Like the court in *Kropel*, we are faced with an equal protection issue. The legislature has elected to specifically provide police officers and

employees of the municipalities governed by Division 1 with certain safeguards but has failed to give police officers and employees of other cities the same protection. The legislature, to serve the public interest, may create legislative classifications since perfect uniformity of treatment of all persons is neither practical nor desirable. (*Begich v. Industrial Com.* (1969), 42 Ill. 2d 32, 245 N.E.2d 457.) And legislative classification based upon population is valid, if there is a reasonable relationship between the objective sought to be accomplished by the law and the population differences fixed by the legislature. (*People ex rel. Adamowski v. Wilson* (1960), 20 Ill. 2d 568, 170 N.E.2d 605.) However, there must be a reasonable basis for differentiating between the class to which the law is applicable and the class to which it is not, and, further, the classification must bear a rational relation to the evil to be remedied and the purpose to be attained by the statute, or the classification will be deemed arbitrary and unconstitutional (*City of Carbondale v. Van Natta* (1975), 61 Ill. 2d 483, 338 N.E.2d 19; *Begich v. Industrial Com.* (1969), 42 Ill. 2d 32, 245 N.E.2d 457), even if the classification is one based upon population. (*People ex rel. Adamowski v. Wilson* (1960), 20 Ill. 2d 568, 170 N.E.2d 605.) Thus, in *Adamowski* a provision allowing persons to be hired only by any city with less than 200,000 population for certain positions requiring technical training or knowledge although they were not residents of the city was held to be an unreasonable classification. Defendants have suggested no possible rational relationship between the classification here and the objectives sought to be accomplished and we have been able to conceive of none. Accordingly, in order to protect this statute from constitutional attack we follow *Kropel* and read the statute *in pari materia*, thus reading into section 10—2.1—17 the requirements of sections 10—1—18 and 10—1—18.1 that warning be given before interrogation.

It follows, therefore, that Barger erred in interrogating Palcek without previously having informed him of his rights as required by statute. Since he was not so informed, neither the various statements nor any other evidence acquired solely because of these statements should have been admitted into evidence at the hearing.

For the foregoing reasons, the decision of the trial court is reversed and the dismissal of the plaintiff by the Board is vacated and the case is remanded to the Board for further proceedings in accordance with this opinion.

Reversed and remanded.

JIGANTI, P. J., and JOHNSON, J., concur.