WILLIAM GEGENWARTH, Plaintiff-Appellee, *v.* THE DEPARTMENT OF LAW ENFORCEMENT *et al.*, Defendants-Appellants.

Fourth District    No. 17230

Opinion filed February 11, 1982.

Tyrone C. Fahner, Attorney General, of Chicago (Edward Kay, Assistant Attorney General, of counsel), for appellants.

Edward G. Coleman, of Springfield, for appellee.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On August 1, 1978, defendant Department of Law Enforcement Merit Board (Merit Board) entered an order finding plaintiff, William

Gegenwarth, a trooper employed by defendant Department of Law Enforcement, Division of State Police (State Police), guilty of insubordination and suspending him for 180 days without pay. The circuit court of Sangamon County, upon administrative appeal by plaintiff, reversed the Merit Board order. Defendants appeal. We reverse the circuit court and affirm the Merit Board.

The evidence before the Merit Board showed that State Police officials were suspicious that because plaintiff had secondary employment with Sears Roebuck and Company (Sears) and had taken an unusually large number of days of sick leave, he might have been using some of the sick leave to work at his other job. An investigation was started during which plaintiff was ordered by a superior officer to permit persons from the State Police professional standards section (PSS) to obtain copies of plaintiff's employment records with Sears. The Merit Board found plaintiff's refusal of the demand to be insubordination. Plaintiff maintains he was not required to grant the request because (1) before making the demand, the State Police failed to give him certain warnings required by statute, and (2) the demand violated his right to fundamental due process.

Section 10—1—18 of the Illinois Municipal Code (Ill. Rev. Stat. 1979, ch. 24, par. 10—1—18) provides that before classified employees of a municipality that has adopted the civil service provisions of the Code may be "interrogated or examined by or before any disciplinary board, or departmental agent or investigator," the results of which procedure may be the filing of suspension or removal charges, certain steps must be taken to protect the employee. These steps include advising the employee in writing that "his admissions made in the course of the hearing, interrogation or examination may be used as the basis for [the] charges." The parties do not dispute that no such writing was supplied plaintiff here and that if section 10—1—18 were applicable here, the action of the State Police in investigating plaintiff and demanding his consent to access to his employment file at Sears would come within the purview of the section. The legislative provision for disciplinary and removal proceedings before the Merit Board makes no such requirement. (Ill. Rev. Stat. 1979, ch. 121, pars. 307.13, 307.14.) Plaintiff maintains that legislation should be considered *in pari materia* with section 10—1—18 of the Municipal Code and held to contain the provisions by implication.

Plaintiff's position is supported by the case of *Palcek v. City of Chicago Heights* (1979), 74 Ill. App. 3d 702, 393 N.E.2d 1218. There, administrative proceedings for discharge of policemen of the defendant-city were governed by section 10—2.1—17 of the Municipal Code (Ill. Rev. Stat. 1977, ch. 24, par. 10—2.1—17) which also had no provision similar to section 10—1—18 of the Code. In a proceeding for the

discharge of a policeman, a statement taken from him by police officials without advising him in the manner required by section 10—1—18 was introduced into evidence in the administrative hearing over the officer's objection. On appeal in the appellate court for the First District, the use of the statement was held to be reversible error.

The *Palcek* court noted that whether proceedings for discipline or discharge of municipal police officers was governed by section 10—2.1—17 or section 10—1—18 depended upon the size of the municipality and whether its voters had elected to be governed by the civil service provisions of section 10—1—1 *et seq.* of the Code (Ill. Rev. Stat. 1977, ch. 24, par. 10—1—1 *et seq.*). The court deemed those differences insufficient to provide a rational basis for the difference in treatment of police officers. The court held consideration of section 10—2.1—17 *in pari materia* with section 10—1—18 and the reading of the employee safeguards of the latter into the former was necessary to prevent the former from denying equal protection to those police officers governed by it. The court also noted that in *Kropel v. Conlisk* (1975), 60 Ill. 2d 17, 322 N.E.2d 793, the supreme court held that the summary suspension procedures of section 10—1—18.1 of the Municipal Code (Ill. Rev. Stat. 1973, ch. 24, par. 10—1—18.1), which literally permitted the suspension of a police officer for up to 30 days without a hearing was required to be considered *in pari materia* with section 10—1—18 of that code (Ill. Rev. Stat. 1973, ch. 24, par. 10—1—18) and sections 8b.6, 8b.15, and 8b.16 of the Personnel Code (Ill. Rev. Stat. 1973, ch. 127, pars. 63b108b.6, 63b108b.15, 63b108b.16), which provided for some reasonable type of hearing for personnel suspended for more than a few days but not to exceed 30 days. The supreme court deemed it necessary to read the provisions of section 10—1—18 into section 10—1—18.1 in order to prevent the latter from denying both due process and equal protection.

In *Lupo v. Board of Fire and Police Commissioners* (1979), 82 Ill. App. 3d 449, 402 N.E.2d 624, the Appellate Court for the Second District, faced with substantially the same situation as the *Palcek* court, refused to follow that decision. The *Lupo* court stated that unlike in *Kropel*, no due process violation arose from the failure of the legislation in issue to provide for admonitions to the police officers in regard to admissions they might make in the course of disciplinary procedure. The court also concluded that a rational basis existed to differentiate the two legislative provisions in issue. We agree.

■■ Section 10—1—18 applies to various types of municipal employees under civil service. It is not limited to police employees. Section 10—1—18.1 is limited to police employees. The legislation under scrutiny here is applicable only to "Department of Law Enforcement officers." (Ill. Rev. Stat. 1979, ch. 121, par. 307.13.) Such an officer would be more likely to

understand the use to which an admission made by him might be put than would many municipal employees covered by section 10—1—18. That alone constitutes a rational basis for the distinction made and renders unnecessary application of the rule of *in pari materia* to give constitutionality to the legislation. Our situation differs from that in *Kropel* in that police officers are in as much need of the rights requested there as are other civil service employees. They are not in need of the same advice as to the consequences of their admissions.

As was the case when discussing plaintiff's statutory rights, the cases cited by both sides as bearing upon plaintiff's due process rights concern testimonial matter required of an employee under possible threat of discharge. Here, the information sought was records in the control of another, but neither side disputes that the situations are analogous. We agree with defendants that the case of *Kammerer v. Board of Fire & Police Commissioners* (1970), 44 Ill. 2d 500, 256 N.E.2d 12, is controlling in determining defendant's due process rights.

In *Garrity v. New Jersey* (1967), 385 U.S. 493, 17 L. Ed. 2d 562, 87 S. Ct. 616, the Supreme Court held that a policeman compelled by his employer under threat of loss of job to testify in a proceeding where he was not charged with a crime thereby becomes clothed with immunity against subsequent use of that testimony against him in a criminal case. Later, in *Gardner v. Broderick* (1968), 392 U.S. 273, 20 L. Ed. 2d 1082, 88 S. Ct. 1913, that court held that a police officer who refuses to waive his privilege against self-incrimination and refuses to execute a waiver of the immunity that would arise from his testimony cannot be dismissed from his employment for that refusal. The court further stated that if the officer was not required to waive the immunity described in *Garrity*, he could be required to answer questions which directly and narrowly related to his official duties. The *Kammerer* court held that in view of these rulings, an officer who refused to testify before a police disciplinary board as to matters reasonably related to his work may be discharged for his refusal. The court reasoned that because of the holding of *Garrity*, the policeman would not be incriminating himself in so testifying. The *Kammerer* opinion gives no indication that the police officer had been advised concerning the use that might be made of his testimony or the immunity he would receive if he did testify.

■■ Plaintiff argues that before he could have been required under penalty of sanction to permit the State Police access to the Sears' records, he must first have been advised concerning the immunity he would receive by doing so. We do not interpret *Kammerer* to so require. We deem anything to the contrary in *Confederation of Police v. Conlisk* (7th Cir. 1973), 489 F.2d 891, or *Kalkines v. United States* (U.S. Ct. Cl. 1973), 473 F.2d 1391, not to be binding upon us.

The request of plaintiff to furnish the Sears' records was sufficiently reasonably related and narrowly confined to the performance of his duties. At plaintiff's request the original document he was asked to sign was amended to delete reference to financial and credit reports and limited to "applications for employment, time records, work schedules, medical and other records relating to secondary employment." In view of the evidence of plaintiff's use of nearly 30 days' sick leave in the previous year and State Police regulations prohibiting secondary employment that conflicted with the trooper's primary duties, we deem the request to fall within the *Gardner, Kammerer*, requirements.

■■ For the reasons stated, we reverse the judgment of the circuit court and affirm the suspension ordered by the Merit Board.

Judgment of the circuit court reversed; suspension ordered by the Merit Board affirmed.

WEBBER and MILLS, JJ., concur.