**Scott PETERSEN, Plaintiff,**

v.

**The BOARD OF REGENTS OF the REGENCY UNIVERSITY SYSTEM, Defendant.**

**No. 85 C 20030.**

United States District Court,
N.D. Illinois, W.D.

Oct. 10, 1985.

Stanley H. Jakala, Berwyn, Ill., for plaintiff.

George Shur, DeKalb, Ill., for defendant.

## ORDER

ROSZKOWSKI, District Judge.

The defendant Board of Regents has moved that the court grant summary judgment on its behalf. On the basis of the briefs submitted and for the reasons set out below the court grants summary judgment for the defendant.

## BACKGROUND

Scott Petersen, the plaintiff in this action is a police officer for the Northern Illinois University Police Department. In August of 1985 Petersen received a memorandum from his superior, Captain Paul Leifheit of the University Police. The memorandum alleged three violations of department rules [1] and recommended a three-day suspension. On August 31, the department held a hearing and neither side claims any procedural irregularities. Pursuant to a Collective Bargaining Agreement, however, the Plaintiff as a member of the Fraternal Order of Police had a right to a second hearing at the level of the Director of Personnel.

An attorney for the plaintiff and the union requested a schedule and then a continuance of that schedule for a second hearing. The employee Relations Officer whom the Director of Personnel designated to conduct the hearing refused to allow Petersen's counsel to accompany Petersen into the hearing room. Only a union representative was allowed to and did accompany Petersen into the hearing room. The Employee Relations Officer subsequently approved the department's request to suspend Petersen for three days and Petersen served the suspension in three consecutive work days.

1. Petersen's Sergeant charged him with violations of these three rules:

a. Attention to Duty, Section IV.09 of Departmental Rules and Regulations—making "false official reports or enter[ing] or caus[ing] to be entered in any department book record any inaccurate, false or improper entry or misrepresentation of the facts."

b. Department Procedure A–03, Section I(d)—failing "to gather all possible information, names, and evidence necessary to complete the accident report."

c. Uniforms and Equipment, Section II.34 of Department Rules and regulations—tearing up and destroying "an official accident report [partially typed] which had been initialed by another officer."

## DISCUSSION

Petersen claims that by denying him the right to have his attorney present at this second hearing the Board of Regents violated his constitutional rights to equal protection and to due process of the laws.

### A. Equal protection claims

■ In *Palcek v. City of Chicago Heights,* 74 Ill.App.3d 702, 393 N.E.2d 1218, 30 Ill.Dec. 871 (1979), a police officer was discharged from the Chicago Heights Police Department after the City's Board of Fire and Police Commissioners found the officer guilty of removing property from a store. The officer appealed his discharge contending that his statements that were used against him were obtained without a warning of the officer's rights under certain Illinois statutes. The appellate court noted that one of three Municipal Code sections could determine a police officer's rights during a discharge. The choice depended on the population of the employing community and whether the community had elected to be controlled by the civil service provisions of the Municipal Code section 10–1–1. *Palcek,* 74 Ill.App.3d at 703, 393 N.E.2d at 1220, 30 Ill.Dec. at 873 (citing Ill.Rev.Stat. ch. 24, ¶ 10–1–1 (1977)).

If the City had a population of at least 5,000 and no more than 250,000 and was not subject to the Municipal Code section 10–1–1, or had a population of less than 5,000 and was subject to Division 2.1 of the Municipal Code, section 10–2.1–1 of the Municipal Code regulated removal and discharge. That section provided in pertinent part,

> no officer or member of the fire or police department of any municipality subject to this Division 2.1 shall be removed or discharged except for cause, upon written charges, and after an opportunity to be heard in his own defense. * * * The board of fire and police commissioners shall conduct a fair and impartial hearing of the charges, to be commenced within 30 days of the filing thereof, which hearing may be continued from time to time. In case an officer or member is found

guilty, the board may discharge him, or may suspend him not exceeding 30 days without pay. The board may suspend any officer or member pending the hearing with or without pay, but not to exceed 30 days.

Ill.Rev.Stat. ch. 24, ¶ 10–2.1–1 (1983). If the city was subject to the civil service provisions of the Municipal Code, section 10–1–18 applied, and it provided in pertinent part,

> no officer or employee in the classified civil service of any municipality who is appointed under the rule and after examination, may be removed or discharged, or suspended for a period of more than 30 days, except for cause upon written charges and after an opportunity to be heard in his own defense. * * * Before any officer or employee in the classified service of any municipality may be interrogated or examined by or before any disciplinary board, or departmental agent or investigator, the results of which hearing, interrogation or examination maybe the basis for filing charges seeking his *removal or discharge,* he must be advised in writing as to what specific improper or illegal act he is alleged to have committed; *he must be advised in writing that his admissions made in the course of the hearing, interrogation or examination may be used as the basis for charges seeking his removal or discharge; and he must be advised in writing that he has the right to counsel of his own choosing present to advise him at any hearing, interrogation or examination;* and a complete record of any hearing, interrogation or examination shall be made and a complete transcript thereof made available to such officer or employee without charge and without delay. Nothing in this Division 1 limits the power of any officer to suspend a subordinate for a reasonable period not exceeding 30 days except that any employee or officer suspended for more than 5 days or suspended within 6 months after a previous suspension shall be entitled, upon request, to a hearing

before the civil service commission concerning the propriety of such suspension. Ill.Rev.Stat. ch. 24, ¶ 10–1–18 (1983) (emphasis added). Section 10–1–18.1 applied only to Chicago and provided in pertinent part,

> In any municipality of more than 500,000 population, no officer or employee of the police department in the classified civil service of the municipality whose appointment has become complete may be removed or discharged, or suspended for more than 30 days except for cause upon written charge and after an opportunity to be heard in his own defense by the Police Board. Before any such officer or employee may be interrogated or examined by or before any disciplinary board, or department agent or investigator, the results of which hearing, interrogation or examination may be the basis for filing charges seeking his removal or discharge, *he must be advised in writing as to what specific improper or illegal act he is alleged to have committed; he must be advised in writing that his admissions made in the course of the hearing, interrogation or examination may be used as the basis for charges seeking his removal or discharge; and he must be advised in writing that he has the right to counsel of his own choosing present to advise him at any hearing, interrogation or examination;* and a complete record of any hearing,

interrogation or examination shall be made and a complete transcript thereof made available to such officer or employee without charge and without delay.

Ill.Rev.Stat. ch. 24, ¶ 10–1–18.1 (1983) (emphasis added).

The court in *Palcek* assumed that section 10–2.1–1 which did not guarantee counsel applied. After examining possible reasons why the state might have guaranteed counsel to officers in some municipalities and not to officers in others, the court found no reasonable relationship between the objectives that the Municipal Code sought and the classification that the Municipal Code used. *Palcek*, 74 Ill.App.3d at 707, 393 N.E.2d at 1223, 30 Ill.Dec. at 876. Rather than declare section 10–2.1–1 unconstitutional, however, the court saved section 10–2.1–1 by reading it in pari materia with the other two sections as providing counsel for officers in every municipality. *Id.*

After the *Palcek* case had been decided, Illinois enacted the Uniform Peace Officer's Act, P.A. 83–981 (codified at Ill.Rev. Stat. ch. 85, ¶¶ 2551–69 (1984 Cumm.Supp.) (effective Dec. 9, 1983). The Act guaranteed counsel to all local police officers being interrogated for formal investigations.[2] The Act defines formal investigations as investigations "of misconduct which may be the basis for filing charges seeking his or her removal, discharge or suspension in excess of 3 days."[3]

---

**2.** The Uniform Peace Officers' Act, § 3.9 provides,

> The officer under investigation shall have the right to be represented by counsel of his or her choosing and may request counsel at any time before or during interrogation. When such request for counsel is made, no interrogation shall proceed until reasonable time and opportunity are provided the officer to obtain counsel.
> If a collective bargaining agreement requires the presence of a representative of the collective bargaining unit during investigations, such representative shall be present during the interrogation, unless this requirement is waived by the officer being interrogated.

Ill.Rev.Stat. ch. 85, ¶ 2562 (1984 Cumm.Supp.)

**3.** The Uniform Peace Officers' Act, § 2 provides,

> For the purposes of this Act, unless clearly required otherwise, the terms defined in this Section have the meaning ascribed herein:
> (a) "Officer" means any peace officer, as defined by Section 2–13 of the Criminal Code of 1961, as now or hereafter amended, who is employed by any unit of local government, including supervisory, and command personnel. The term does not include crossing guards, parking enforcement personnel, traffic wardens or employees of any State's Attorney's Office.
> (b) "Informal inquiry" means a meeting by a supervisory or command personnel with an officer upon whom an allegation of misconduct has come to the attention of such supervisory or command personnel, the purpose of which meeting is to mediate a citizen complaint or discuss the facts to determine whether a formal investigation should be commenced.

The plaintiff Petersen is employed pursuant to the University Civil Service System, Ill.Rev.Stat. ch. 24½, ¶¶ 38b1–38m, (1983). Aside from the Fraternal Order of Police's collective bargaining agreement, section 38b14 regulates discharges of university employees and provides in pertinent part,

> no employee shall be demoted, removed or discharged except for just cause, upon written charges, and after an opportunity to be heard in his own defense if he makes a written request for a hearing to the Merit Board within 15 days after the serving of the written charges upon him. Upon the filing of such a request for a hearing, the Merit Board shall grant such hearing to be held within 45 days from the date of the service of the demotion, removal or discharge notice by a hearing board appointed by the Merit Board. The members of the hearing board shall be selected from among the members of a panel established by the Merit Board after consultation with the Advisory Committee provided in Section 36c. The hearing board shall make and render findings of facts on the charges and transmit to the Merit board a transcript of the evidence along with its findings of fact. The findings of the hearing board when approved by the Merit Board shall be certified to the employer. If cause for demotion, removal or discharge is found, the employee shall be immediately separated from the service.

Ill.Rev.Stat. ch. 24½, ¶ 38b14 (1983).

The plaintiff suggests that the court should apply the equal protection analysis of *Palcek* to hold that a police officer employed under the University Civil Service system should have the same right to counsel as a municipal police officer. To prove an equal protection violation, however, the plaintiff has to prove that he is being treated differently than others similarly situated. *Plyler v. Doe*, 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982). Neither of the statutes that the *Palcek* case interpreted nor the Uniform Peace Officers Act guarantees counsel to officers when the charge would be a basis only for a suspension of three days. *See* Municipal Code, Ill.Rev.Stat. ch. 24, ¶¶ 10–1–18, 10–1–18.1 (1983) (guaranteeing right to counsel when the results of the hearing "may be the basis for filing charges seeking his removal or discharge"). Uniform Peace Officers Act, Ill.Rev.Stat. ch. 85, ¶ 2552(c) (1984 Cumm.Supp.) (defining formal investigation as to an investigation which may be basis of charges seeking suspension in excess of 3 days). Because the plaintiff has made no showing that a municipal officer would have a right counsel for a hearing that might be the basis for a three-day suspension, the plaintiff has failed to show that he is being treated differently from those with whom he contends he is similarly situated. Therefore, the court will grant summary judgment for the defendants on the plaintiff's equal protection claim.

## B. Due process claims

■ Petersen contends that by denying him the right to have an attorney accompany him to his hearing prior to the three-day suspension, the Board of Regents denied him due process of law. Petersen claims that he has a property interest both in his

---

(c) "Formal investigation" means the process of investigation ordered by a commanding officer during which the questioning of an officer is intended to gather evidence of misconduct which may be the basis for filing charges seeking his or her removal, discharge or suspension in excess of 3 days.

(d) "Interrogation" means the questioning of an officer pursuant to the formal investigation procedures of the respective local governmental unit in connection with an alleged violation of such unit's rules which may be the basis for filing charges seeking his or her

suspension, removal, or discharge. The term does not include questioning (1) as part of an informal inquiry or (2) relating to minor infractions of agency rules which may be noted on the officer's record but which may not in themselves result in removal, discharge or suspension in excess of 3 days.

(e) "Administrative proceeding" means any non-judicial hearing which is authorized to recommend, approve or order the suspension, removal or discharge of an officer.

Ill.Rev.Stat. ch. 85, ¶ 2552 (1984 Cumm.Supp.).

job and in the suspension process.[4] Both the practice of the University and the collective bargaining agreement of which Petersen is a member buttress his claim for a property interest in both the job and the suspension process. The Supreme Court stated in *Perry v. Sinderman*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972),

"Property" interests subject to procedural due process protection are not limited by a few rigid, technical forms. Rather, "property" denotes a broad range of interests that are secured by "existing rules or understandings." A person's interest in a benefit is a "property" interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing.

*Id.* at 601, 92 S.Ct. at 2699; *Schultz v. Baumgart*, 738 F.2d 231, 235 (7th Cir. 1984); *Vail v. Board of Educ. of Paris Union Sch. Dist. No. 95*, 706 F.2d 1435, 1437 (7th Cir.1983), *aff'd. by an equally divided court*, 466 U.S. 377, 104 S.Ct. 2144, 80 L.Ed.2d 377 (1984).

In *Schultz*, the Seventh Circuit found that a statute which allowed for a fire fighter's dismissal only "for cause" supported a legitimate claim of entitlement based on "mutually explicit understandings." *Schultz*, 738 F.2d at 235 (quoting *Sinderman*, 408 U.S. at 601, 92 S.Ct. at 2699). The statute in *Schultz* provided for board review of the administrator's action and state court review of the board's action. Moreover, Wisconsin court decisions involving the statute required the review board to submit a record that showed the board's decision was reasonable based on the evidence. *Schultz*, 738 F.2d at 235.

The Seventh Circuit in *Vail* cited *Sinderman* to uphold a district court opinion that a high school athletic director had a property interest in his job based on an implied contract supportable by state law. *Vail*, 706 F.2d at 1438. The circuit court found that the implied contract constituted an "existing rule[ ] or understanding[ ]" within the meaning of *Sinderman*. *Vail*, 706 F.2d at 1437–38.

█ In the present case, the court finds that like the procedures involved in *Schultz* the practice of the University and the mutually explicit understanding of the University and the Fraternal Order of Police did give Petersen a property interest in both his employment and in the suspension process. There is nothing, however, within the collective bargaining agreement that secures a lawyer as a part of the suspension process. The rider that the plaintiff tenders which reports an agreement between the parties to discuss a right of counsel does not rise to the level of a mutually explicit understanding.[5] The hearings that the plaintiff had were clearly as much as the collective bargaining agreement contemplated. Therefore the University deprived the plaintiff of no property with respect to the suspension process.

█ The question remains what process was due to the plaintiff before a deprivation of three days of work. In determining what process was due, the court must inventory the interests set out in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

---

4. The plaintiff has also claimed a liberty interest in not being stigmatized as unprofessional by his suspension and the mark on his record. *Hershinow v. Bonamarte*, 735 F.2d 264 (7th Cir. 1983), however, clearly states that a police officer's three-day suspension and mark on his record do not implicate liberty interests. *Id.* at 266.

5. Plaintiff's exhibit H is a rider to the collective bargaining agreement.

In addition to renegotiation of Article X wages in an Agreement approved December 9, 1982, between the parties thereto, the parties also agree to additional discussions on the issue of permitting attorneys to be present and to participate in hearings conducted by the Personnel Office regarding potential disciplinary suspension of bargaining unit employees.

/s/ Darlin H. Fenboer
for Northern Illinois University
/s/ George Liepins
for Fraternal Order of Police
11/30/82
Date

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the addition of substitute procedural safeguards would entail.

*Id.* at 335, 96 S.Ct. at 903.

The Supreme Court recently revisited its analysis of *Mathews* in *Walters v. National Ass'n of Radiation Survivors,* — U.S. ——, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985). In *Walters,* a district court had granted a nationwide injunction against the enforcement of a congressional act that limited to ten dollars the fee an attorney could charge a veteran or member of the veteran's family to appear as an advocate for benefits before the Veterans Administration. The Supreme Court struck down the injunction, disagreeing that the plaintiffs were likely to succeed in their claims that Congress's action violated the veterans' due process rights to counsel. *Id.* at ——, 105 S.Ct. at 3196.

After stating the serious deference that the Court owed to acts of Congress, the Court cast some light on its previous decisions concerning the type of process due to different due process claims, and particularly whether the process required the assistance of counsel. The Court stated that when personal liberty was at issue, counsel was nearly always necessary. *Id.* at ——, 105 S.Ct. at 3195 (citing, e.g., *Gideon v. Wainright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) ).

The Court noted, however, that when the right was a property interest further analysis was necessary. The court compared *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) in which the court required that counsel be permitted to take part in hearings on the termination of welfare benefits to *Mathews v. Eldridge,*

424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) in which the Court had declined to require pretermination hearings before terminating social security benefits. According to the majority in *Walters,* the difference lay in the dependence of the plaintiffs in *Goldberg* on welfare benefits for their daily subsistence. *Walters,* — U.S. at ——, 105 S.Ct. at 3195. The court held that the veterans' benefits, because they were not based on need, were more analogous to the social security benefits at issue in *Mathews. Id.*

The Court characterized other of its due process cases as not requiring counsel because the situations were not adversarial and did not approximate a trial. *Id.* at ——, 105 S.Ct. at 3196. In *Parham v. J.R.,* 442 U.S. 584, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979), for example, the precommitment determination that a minor should be committed was better put to a doctor than a lawyer. *Id.* at ——, 105 S.Ct. at 3194. In *Walters,* the Court determined that Congress had established a nonadversarial, ex parte process of applying for benefits that did not require counsel. *Id.* at ——, 105 S.Ct. 3196.

In the instant case, the plaintiffs three-day suspension is not likely to precipitate the kind of need the Supreme Court recognized in *Goldberg.* But neither has the defendant made any showing that the hearings involved here are nonadversarial. The hearings do not appear at all analogous to the hearings at issue in *Walters* in which federal regulations directed the reviewing board to assist the claimant and to resolve all reasonable doubts in the claimants' favor. *Walters,* —— U.S. at ——, 105 S.Ct. at 3183–84.

The hearings are neither the design of Congress nor the State. The exclusion of counsel is simply a University practice. The fiscal and administrative burdens that the University would have to shoulder by admitting counsel to these hearings appears to be minimal. The hearings themselves are already required, and counsel could reduce significantly the risk of erroneous deprivations of property. *See Walters,* — U.S. at ——, 105 S.Ct. at 3197–98 (O'Connor, J. concurring) (although under

instant facts denial of attorney not a due process violation, complicated case or greater loss at stake may raise due process implications). The court can infer no good reason for the defendant Board of Regents to exclude counsel from suspension hearings as a matter of course.

The court must look at due process actions like the present one on a case-by-case basis. The court will direct its inquiry primarily toward two factors: the severity of the loss and the nature of the hearing. Although the court can presage actions in which one of the factors by its own weight will compel the presence of counsel, normally the court will base its determination on a combination of both these factors. This is essentially the *Mathews* analysis set out above as the Court in *Walters* focused it on the question of counsel.

In the present action the court can find only that the exclusion of the plaintiff's attorney from the plaintiff's hearing was inadvisable. Because the violations of which the plaintiff was accused presented fairly simple factual underpinnings, and the hearing resulted in only a three-day suspension, the court cannot find that the exclusion of the plaintiff's attorney constituted a due process violation. Therefore the court grants summary judgment to the defendants.